STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. KATHY SMITH, DEFENDANT-APPELLANT.

Argued January 25, 1971—Decided April 12, 1971.

*Mr. Francis M. Nevins, Jr.* argued the cause for appellant (*Mr. Peter M. Siegel,* Administrator, Middlesex County Legal Services, attorney).

*Mr. Michael L. Bitterman,* Deputy Attorney General, argued the cause for respondent (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

FRANCIS, J. Upon her plea of guilty, defendant Kathy Smith was convicted in the Middlesex County District Court of the unlawful use of a narcotic drug, *i. e.,* marihuana, in violation of *N. J. S. A.* 2A:170–8. Under the statute such an infraction was a disorderly person offense, and on March 26, 1970, pursuant to *N. J. S. A.* 2A:169–4, the trial court imposed a fine of $25 and a suspended six months workhouse sentence accompanied by an order placing her on probation for one year. In addition, acting under the legislative mandate of *N. J. S. A.* 2A:170–8, the court suspended her motor vehicle driver's license for one year and thereafter until the Director of Motor Vehicles, after a hearing, decides that she is no longer a drug user. An appeal was taken to the Appellate Division from the part of the judgment which suspended the driver's license, and the suspension was stayed pending the review. We certified the appeal on our own motion before it was argued there.

In seeking a reversal, defendant contends that the portion of *N. J. S. A.* 2A:170–8 (since repealed) which prescribed the mandatory license forfeiture was unconstitutional in that it violated the equal protection and due process requirements of the Fourteenth Amendment of the United States Constitution. We see no such infirmity in the statute, but for reasons to be stated we remand the cause to the court below for reconsideration of the sentence.

At the time of sentence the pertinent portion of *N. J. S. A.* 2A:170–8 provided:

Any person who uses or who is under the influence of any narcotic drug, as defined in article 1 of chapter 18 of Title 24 of the Revised Statutes (Food and Drugs), the uniform narcotic drug law, for a purpose other than the treatment of sickness or injury as

prescribed or administered by a person duly authorized by law to treat sick and injured human beings, is a disorderly person.

\* \* \* \* \* \* \* \*

In addition to the general penalty prescribed for disorderly conduct pursuant to section 2A:169–4 of this Title, every person adjudged a disorderly person for a violation of this section shall forthwith forfeit his right to operate a motor vehicle over the highways of this State for a period of one year from the date of his conviction and until such privilege shall be restored to him by the Director of Motor Vehicles upon application to and after a hearing and determination by, the director that such person is no longer a user of drugs within the meaning of this section.

Defendant contends that the mandatory suspension of her driver's license for a year upon conviction for a single incident of use of marihuana, when the illegal use was unconnected with the operation of an automobile, invidiously discriminated against her and thus denied her equal protection of the laws contrary to the Constitution. Particularizing, she points out that certain users were excluded from the operation of the statutory penalty, *i. e.*, individuals using marihuana for the treatment of "sickness or injury as prescribed or administered by a person duly authorized by law to treat sick and injured human beings" without regard to whether the license holder used the prescribed or administered narcotic drug before or while driving a motor vehicle. She notes further that other more grievous violators of the narcotics law, *i. e.*, possessors and sellers were not subject to the automatic suspension mandate. *N. J. S. A.* 24:18–4, 47.

We accept the principle that in the administration of criminal justice no person can be subject to a greater or different punishment for an offense than that to which others of the same class are subjected. However, equal protection is not denied because a penal statute might have gone farther than it did or might have included some persons or classes of persons who were excluded. The need for a particular or an additional sanction in one area may appear to the legislative mind in different dimensions and propor-

tions — as more acute in one situation than in another. The constitutional prescription for equal protection does not mean that a designated sanction must reach or be imposed upon every class of violators of the narcotics laws to which it might be applied — that the Legislature must punish or regulate all such persons in precisely the same way or not at all. The Legislature has wide discretion in the creation or recognition of different classes of offenders for separate treatment. In pursuing a legitimate objective, it may recognize degrees of harm or possible harm and strike at what it feels more urgently needs repression. If there is some reasonable basis for the recognition of separate classes, and if the disparate treatment of the classes has a rational relation to the object sought to be achieved by the lawmakers, the Constitution is not offended. The transgression arises only when the classification rests upon grounds wholly irrelevant to achievement of the State's objective; the separate treatment must admit of but one conclusion beyond a rational doubt, *i. e.,* that the basis therefore is arbitrary and unreasonable and without relevance to the legislative goal. *State v. Young,* 57 *N. J.* 240, 249–250 (1970) ; *New Jersey Chap., American Institute of Planners v. N. J. State Bd. of Prof. Planners,* 48 *N. J.* 581, 601–603, *appeal dismissed* 389 *U. S.* 8, 88 *S. Ct.* 70, 19 *L. Ed.* 2d 8 (1967) ; *David v. Vesta Co.,* 45 *N. J.* 301, 314–315 (1965).

Applying the general test described, we find no difficulty in rejecting defendant's claim of invidious discrimination. Obviously, there is a difference in degree of transgression of the criminal and moral code between those who are merely users of narcotics on the one hand and those who are possessors and sellers of them on the other. The user is ordinarily the victim, potential or actual, of the other two classes of offenders, and although he is legitimately subject to punishment according to the nature of his transgression, and subject to regulation of his conduct in respect to the possible danger to the public his use of the narcotic

may create, it cannot be regarded as unreasonable for the Legislature in prescribing sanctions to separate him from the more flagrant violators. That the Legislature regarded the user differently from the possessor and the seller, and the former a less heinous offender than the latter two is plain. Sellers of "narcotics" over 21 years of age were guilty of a high misdemeanor punishable by a fine of not less than $2,000 or more than $10,000 and by imprisonment for not less than two years or more than life. Possessors and, apparently, sellers under 21 were also guilty of a high misdemeanor and subject, for the first offense, to imprisonment for a term of not less than two years or more than 15 years and to a fine not exceeding $2,000. *N. J. S. A.* 24:18–47; see now *N. J. S. A.* 24:21–19, 20. In addition, any motor vehicle used in or in connection with any such violations was subject to forfeiture. *N. J. S. A.* 24:18–38.1–38.3 (now repealed, *L.* 1970, *c.* 226, § 47; see *L.* 1970, *c.* 226, § 35b (4)); see *Ben Ali v. Towe,* 30 *N. J. Super.* 19 (App. Div. 1954); *Van Oster v. Kansas,* 272 *U. S.* 465, 47 S. Ct. 133, 71 *L. Ed.* 354 (1926); *United States v. One 1962 Ford Thunderbird,* 232 *F. Supp.* 1019 (N. D. Ill. 1964); but *cf. Commercial Credit Corp. v. Congleton,* 21 *N. J. Super.* 88 (Cty. Ct. 1952). Moreover, under the Motor Vehicle Act any person who operated a motor vehicle on a highway while knowingly having in his possession or in the motor vehicle any narcotic drug as defined in *N. J. S. A.* 24:18–2, without a valid written prescription, was subject to a fine of $50 and the mandatory forfeiture of his driver's license for two years from the date of conviction. *N. J. S. A.* 39:4–49.1. Finally, apparently in an effort to cover all phases of the subject, the Motor Vehicle Act, *N. J. S. A.* 39:4–50, provided that anyone who operated a vehicle while under the influence of a narcotic or habit-producing drug, or permitted another person who was under such influence to operate a vehicle owned by him or in his custody or control, would be subject "for the first offense, to a fine of not less than $200.00

nor more than $500.00, or imprisonment for a term of not less than 30 days nor more than 3 months or both, in the discretion of the magistrate, and shall forthwith forfeit his right to operate a motor vehicle over the highways of this State for a period of 2 years from the date of his conviction or until he reaches the age of 21 years, whichever is the greater period of time, in the case of a person who at the time of his conviction is under the age of 21 years."

With regard to the user, the lawmakers saw him as a less culpable offender than the trafficker and concluded that although he should be punished and the public protected against dangers that might arise from his use of narcotics, less severe sanctions were justified in order to pursue the aim of rehabilitating him. For that reason, the user was designated a disorderly person punishable by not more than six months confinement or by a $500 fine or both, *N. J. S. A.* 2A:169–4, and by the mandatory loss of his motor vehicle driver's license for one year and until the Director of Motor Vehicles decided, after hearing, that he was no longer a user of the banned drugs. *N. J. S. A.* 2A:170–8.

As we have indicated above, the Legislature need not deal with all phases of a problem in the same way, so long as the distinctions drawn have some basis in practical experience. *South Carolina v. Katzenbach,* 383 *U. S.* 301, 331, 86 S. Ct. 803, 15 *L. Ed.* 2d 769, 788 (1966). In our view, the legislative coverage formula for narcotics users as distinct from possessors and sellers was rational in both theory and practice. But defendant says, assuming there is a basis for such differentiation, users were not treated equally under the statute. Pointing out that under *N. J. S. A.* 2A:170–8 a person who used marihuana under a doctor's prescription or who had the drug administered to him by a physician for treatment of injury or sickness was not subject to loss of his driver's license, even if he operated an automobile on the public streets after such authorized use, she argues that exemption of this type of user invidiously discriminated

against her. There is no substance in this contention whether the license forfeiture was treated as punishment for unlawful use or as a measure designed to protect the public from hazards arising from operation by a driver while under the influence of marihuana, or both. It may be assumed that when the Legislature excluded the described authorized drug users from the loss of license sanction, it had adequate facts on which it could reasonably conclude that the medically authorized user would employ the drug in such prescribed dosage, fashion, intervals and circumstances, as not to constitute a danger to himself or to the public. We have no doubt that if an authorized user had indulged beyond the limit of the prescription, he would have been treated as a violator of *N. J. S. A.* 2A:170–8 and subject to the mandated penalties.

Continuing the constitutional argument, defendant says that the mandatory driver's license forfeiture is invalid because it is arbitrary and bears no reasonable relationship to enforcement of the narcotics drug law. More specifically, she contends that the automatic deprivation of her license (which in today's society has characteristics of a property right (see *Bechler v. Parsekian,* 36 *N. J.* 242 (1961)), for a single incident of use of marihuana when the use was not connected or associated with operation of a motor vehicle was to deny her due process. But whether the loss of the license under the statute was considered as part of the punishment for conviction of use of marihuana or as a further or associated exercise of the police power to free the highways of licensed drivers who may well present an actual or potential hazard to the public, if they take to the road after using marihuana, we see no constitutional infirmity in the provision.

The legislation to which reference has been made revealed a reasonable effort to control the narcotics problem with respect to the operation of motor vehicles on the public highways by users of or traffickers in forbidden drugs.

Possessors and sellers were made guilty of a high misdemeanor and subjected to severe penalties, including forfeiture of any vehicle used in connection with the nefarious trade. *N. J. S. A.* 24:18–38.1–38.3. A person who operated a vehicle on a highway knowingly having in his possession or in the vehicle any forbidden narcotic drug without a valid prescription, suffered the mandatory forfeiture of his driver's license for two years. *N. J. S. A.* 39:4–49.1. A person who operated a vehicle on a highway while under the influence of such a drug, or who allowed such a driver to operate a vehicle owned by him, on conviction thereof automatically lost his operator's license for at least two years. *N. J. S. A.* 39:4–50. And finally, to serve the dual purpose of punishing a user who possesses a driver's license and of deterring him and keeping him and the potential danger he represents off the public highways, the lawmakers adopted the statute here involved taking his license away for at least a year and until the Director is satisfied that he no longer uses drugs. *N. J. S. A.* 2A:170–8.

█ In the matter of punishment for commission of crimes or disorderly person offenses, the Legislature has a very wide discretion. As a general proposition the courts will not interfere with the prescribed form of penalty unless it is so clearly arbitrary and without rational relation to the offense or so disproportionate to the offense as to transgress the Federal and State constitutional prohibitions against excessive fines or cruel and unusual punishment. *U. S. Const. Amend.* VIII; *N. J. Const.,* Art. I, § XII. Ordinarily the Legislature is in a better position than the courts to know the area in which an evil should be met and to make a decision as to the means of meeting it. And as we have said, the courts will not interfere with the legislative evaluation either as to the classification of offenders selected for separate treatment or as to the penalty prescribed for them, unless it is clearly constitutionally indefensible. *Cf. State v. Young, supra,* 57 *N. J.* 240; *Commonwealth v. Leis,* 355 *Mass.* 189, 243 *N. E.* 2d 898 (1969).

■ In deciding whether the automatic license forfeiture in addition to fine and possible imprisonment for narcotics users (see *State v. Ward*, 57 *N. J.* 75 (1970)), when the particular use out of which the conviction arose was not connected with vehicle operation, is so arbitrary as to deny due process or to amount to unconstitutional punishment, a court will pit the offense against the form of punishment. If one is greatly disproportionate to the other, or if the punishment goes beyond what appears to be a reasonable expedient to achieve the public purpose as it may be deduced from the legislation, then the penalty will be condemned. *Cf. Annotation, Cruel Punishment — Length of Sentence*, 33 *A. L. R.* 3d 335 (1970). But that would occur only when in the face of existing societal conditions the license forfeiture would shock the general conscience and violate principles of fundamental fairness.

We may assume that the Legislature in adopting *N. J. S. A.* 2A:170–8 was aware of the asserted physical and mental effect of the use of marihuana.[1] Presumably also it took notice of the increasing use of the drug, particularly

---

[1] In *Marijuana*, (ed E. Goode, Atherton Press 1969), "The Medical View," by Jerome H. Jaffee, Professor of Psychiatry at the University of Chicago (p. 47) notes:

"The subjective effects of the drug are exquisitely dependent not only on the personality of the user but also on the dose, the route of administration, and the specific circumstances in which the drug is used. The most common reaction is the development of a dreamy state of altered consciousness in which ideas seem disconnected, uncontrollable, and freely flowing. Ideas come in disrupted sequences, things long forgotten are remembered, and others well known cannot be recalled. Perception is disturbed, minutes seem to be hours, and seconds seem to be minutes; space may be broadened and near objects may appear far distant. When larger doses are used, extremely vivid hallucinations may be experienced; these are often pleasant, but their coloring, sexual or otherwise, is more related to the user's personality than to specific drug effects. There are often marked alterations of mood; most characteristically there is a feeling of extreme well-being, exaltation, excitement, and inner joyousness (described as being "high"). * * *" *J. Jaffee*, "The Medical View," at p. 49.

among the younger motor vehicle operators, and the consequent dangers to other motorists on the public highways. For example, the Attorney General's brief contains Division of Motor Vehicle statistics showing that between April 1969 and September 1970 there were 2,062 convictions under *N. J. S. A.* 2A:170-8 which resulted in driver's license forfeiture.

Defendant contends that to take away her driver's license automatically for a single incident of marihuana use which was unconnected with actual driving is to visit arbitrary and unusual punishment upon her. Forfeiture under such circumstances, she claims, has no rational relation to her unlawful act. We cannot agree. In fixing a penalty for violation of its penal code, the Legislature may properly consider the elements of punishment, deterrence and rehabilitation. In our judgment, imposition of temporary forfeiture of a driver's license on a narcotics user had a reasonable relation to all three of those goals. For example, the aim to deter drug users from driving on the highways obviously is a sensible one. An ordinary citizen is qualified to advance an opinion in a court proceeding that a person was intoxicated because of consumption of alcohol. The symptoms of that condition have become such common knowledge that the testimony is admissible. *Searles v. Public Service Ry. Co.,* 100 *N. J. L.* 222 (1924). No such general awareness exists as yet with regard to the signs and symptoms of the condition described as being "high" on marihuana. But a court cannot say that the Legislature, with its greater opportunity for investigation of the symptoms and effects, arbitrarily concluded that the user presented such possibility of highway danger that he should be deterred from sitting in the driver's seat of an automobile. The fact that barring a convicted marihuana user from the driver's seat for a period may be a novel penalty, does not make it arbitrary or unusual punishment. A contrary view would stand in the way of reasonable innovations in penology.

See *Note,* "The Effectiveness of the Eighth Amendment: An Appraisal of Cruel and Unusual Punishment," 36 *N. Y. U. L. Rev.* 846, 849 (1961); see also *Singer, "Psychological Studies of Punishment,"* 58 *Cal. L. Rev.* 405, 430 (1970).

The legislative decision to require the license forfeiture need not be predicated alone upon its reasonableness as punishment. Regulation of traffic on the highways as a safety measure to protect the public is well within the police power of the State. *Unwen v. State,* 73 *N. J. L.* 529 (Sup. Ct. 1906), *aff'd* 75 *N. J. L.* 500 (E. & A. 1907); *Reitz v. Mealey,* 314 *U. S.* 33, 36, 62 S. Ct. 24, 86 *L. Ed.* 21, 24 (1941); *Kane v. New Jersey,* 242 *U. S.* 160, 37 S. Ct. 30, 61 *L. Ed.* 222 (1916). And there can be no doubt about its broad authority to regulate or to bar vehicle operation on the highways by narcotics users. *Cf. Robinson v. California,* 370 *U. S.* 660, 82 *S. Ct.* 1417, 8 *L. Ed.* 2d 758 (1962). The statutes referred to above, having to do with penalties for various kinds of violations of the narcotics laws, furnish an indication of the legislative awareness of the serious evils and dangers connected therewith on the public streets and elsewhere. (See, *e. g.,* requirement for mandatory revocation of license to practice dentistry upon proof of conviction of violation of any Federal or State law relating to narcotics drugs. *N. J. S. A.* 45:6–7.) It seems to us that addition of a temporary forfeiture of a driver's license to a stated fine or imprisonment as a preventive regulation clearly represents a reasonable exercise of the legislative power to impose limitations upon highway use.

Under the circumstances, we hold the view that whether the specified license forfeiture be deemed a punitive sanction for narcotics use or a regulation to protect motorists on public highways from dangers associated with such use, the statute cannot be condemned on any of the grounds advanced by defendant.

As we noted at the outset of this opinion, the forfeiture of defendant's driver's license was stayed pending the determination of this appeal. In the meantime the Legislature adopted the controlled Dangerous Substances Act, *L.* 1970, *c.* 226, which repealed *N. J. S. A.* 2A:170–8, under which defendant was convicted. The new Act, Section 20c (*N. J. S. A.* 24:21–20) provides:

> c. In addition to the general penalty prescribed for a disorderly person's offense pursuant to N. J. S. 2A:169–4, every person adjudged a disorderly person for a violation of this subsection shall, *at the discretion* of the sentencing judge, forthwith forfeit his right to operate a motor vehicle over the highways of this State for a period of not more than 2 years from the date of his conviction and until such privilege shall be restored to him by the Director of Motor Vehicles upon application to and after certification by a physician to the director that such person is *not a drug dependent person* within the meaning of this act. * * *" (Emphasis ours.)

A drug dependent person is one

> "[W]ho is using a controlled dangerous substance and who is in a state of psychic or physical dependence, or both, arising from the use of that controlled dangerous substance on a continuous basis. Drug dependence is characterized by behavioral and other responses, including but not limited to a strong compulsion to take the substance on a recurring basis in order to experience its psychic effects, or to avoid the discomfort of its absence." Art. I, § 2 (*N. J. S. A.* 24:21–2).

Marihuana is designated a controlled dangerous substance. Art. 2 § 5e (10) (*N. J. S. A.* 24:21–5).

The quoted excerpts reveal substantial differences between *N. J. S. A.* 2A:170–8 and Section 20, *L.* 1970, *c.* 226. On conviction at the present time of prohibited marihuana use, (1) forfeiture of the defendant's driver's license is discretionary with the judge, not mandatory; (2) the license would not ordinarily be revoked for a single use of the drug.

Obviously, if Section 20 of the 1970 Act had been in existence when defendant was convicted, it is unlikely on the record before us that the license forfeiture would have occurred. It may be that the Legislature did not intend

*N. J. S. A.* 2A:170–8 to require forfeiture for a single use conviction, and that it tried to indicate that by authorizing the return of the license at the end of a year if the Director of Motor Vehicles was satisfied that the person involved was "no longer a user" of marihuana. But such an interpretation cannot find reasonable support in the language employed.

However, in view of the stay of the forfeiture pending this appeal, the marked change in the legislative direction as to the disposition of such cases and particularly the replacement of the mandatory revocation of the license with the provision for exercise of discretion by the trial judge with respect thereto, we believe defendant's situation warrants further consideration. Since the Legislature has now indicated that the circumstances of each case should play an important role in the exercise of the trial court's discretionary decision respecting forfeiture of a driver's license for drug use, the automatic visitation of such a penalty upon this defendant at this late date would seem to be unjust. Accordingly, although the conviction for violation of *N. J. S. A.* 2A:170–8 must stand, the cause is remanded to the County District Court for restudy of the license forfeiture portion of the sentence imposed.

*For affirmance and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.