STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
NATHANIEL JOHNSON, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 19, 1985—Decided December 19, 1985.

Before Judges MICHELS, GAULKIN and STERN.

*Thomas S. Smith,* Acting Public Defender, attorney for appellant (*Steven M. Gilson,* Designated Counsel, of counsel and on the brief).

*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney for respondent (*Olivia Belfatto,* Deputy Attorney General, of counsel and on the letter brief).

The opinion of the Court was delivered by

MICHELS, P.J.A.D.

The important issue posed by this appeal is whether the 30 year minimum sentence without parole eligibility mandated by *N.J.S.A.* 2C:11–3b is constitutional.

Following plea negotiations, defendant Nathaniel Johnson pleaded guilty to an accusation charging him with committing an act of felony-murder, in violation of *N.J.S.A.* 2C:11–3a(3), by causing the death of Sylvesta Coleman by stabbing her in the course of a robbery. For its part of the plea agreement, the State agreed to recommend that (1) the mandatory minimum sentence of 30 years without parole eligibility, required by *N.J.S.A.* 2C:11–3b, be imposed and (2) the underlying municipal court complaint be dismissed. In accordance with the plea agreement, defendant was committed to the custody of the Commissioner of the Department of Corrections for a term of 30 years without parole eligibility and was assessed a penalty of $25, payable to the Violent Crimes Compensation Board. Defendant appeals.

*N.J.S.A.* 2C:11–3b, the section of the New Jersey Code of Criminal Justice under which defendant was sentenced, provides:

Murder is a crime of the first degree but a person convicted of murder may be sentenced, except as provided in subsection c. of this section [capital punishment provisions], by the court to a term of 30 years, during which the person shall not be eligible for parole or to a specific term of years which shall be between 30 years and life imprisonment of which the person shall serve 30 years before being eligible for parole. [*N.J.S.A.* 2C:11–3b].

Defendant contends that this statute is unconstitutional on its face because it mandates a 30 year minimum sentence without parole eligibility. Specifically, defendant asserts that the statute's mandatory minimum sentence is violative of the Eighth and Fourteenth Amendments' safeguard against the infliction of "cruel and unusual punishment", since a sentencing court can not consider any individualized factors, such as the circumstances surrounding the offense or the prior record and character of the defendant, in mitigation of the mandated sentence. We disagree.

It is firmly settled that the broad power to declare what shall constitute criminal conduct and to fix both the maximum and minimum terms of imprisonment for such conduct has been committed by the people of this State to the legislative, rather than to the judicial branch of government. *State v. Hampton,* 61 *N.J.* 250, 273 (1972). *See also State v. Smith,* 58 *N.J.* 202, 211 (1971). The fact that our Legislature has provided a more severe punishment for criminal acts than the courts approve is no grounds for judicial interference, unless a constitutional or other prohibition against such punishment has been violated. In making this determination, our Supreme Court in *State v. Hampton, supra,* expressed the view that "courts consider whether the nature of the criticized punishment is such as to shock the general conscience and to violate principles of fundamental fairness; whether comparison shows the punishment to be grossly disproportionate to the offense, and whether the punishment goes beyond what is necessary to accomplish any legitimate penal aim." 61 *N.J.* at 273–274. Thus, "[a]bsent such a showing the judiciary must respect the legislative will." *Id.* at 274.

Furthermore, in *State v. Smith, supra,* the Supreme Court emphasized that "courts will not interfere with the prescribed form of penalty unless it is so clearly arbitrary and without rational relation to the offense or so disproportionate to the offense as to transgress the Federal and State constitutional prohibitions against excessive fines or cruel and unusual punishment." 58 *N.J.* at 211 (citing *U.S. Const., Amend* VIII; *N.J. Const.,* (1947), Art. I, § XII). Additionally, in assessing the constitutionality of a punishment which has been legislatively fixed, a court must presume validity. *Gregg v. Georgia,* 428 *U.S.* 153, 175, 96 *S.Ct.* 2909, 2926, 49 *L.Ed.*2d 859, 876 (1976).

The amendments to *N.J.S.A.* 2C:11–3b, which became effective on August 6, 1982, provide three alternative sentences for murder: (1) death; (2) a sentence of 30 years without parole eligibility; and (3) a sentence between 30 years and life, with a mandatory minimum 30 year term of parole ineligibility. *State v. Biegenwald,* 96 *N.J.* 630, 635 (1984) (citing *N.J.S.A.* 2C:11–3b). Here, defendant was sentenced by the trial judge in accordance with the second alternative which, as the Supreme Court has noted, provides for "a *minimum* sentence of thirty years without parole eligibility." *State v. Rodriguez,* 97 *N.J.* 263, 274 n. 4 (1984) (citing *N.J.S.A.* 2C:11–3b (as amended August 6, 1982)). Consequently, pursuant to the provisions of *N.J.S.A.* 2C:11–3b, a term of at least 30 years must be imposed in noncapital murder cases, without consideration of any extraneous factors such as defendant's prior record or character.

Defendant argues, however, that the rationale applied by the United States Supreme Court in striking down both the North Carolina and Louisiana mandatory death penalty statutes in *Woodson v. North Carolina,* 428 *U.S.* 280, 303, 96 *S.Ct.* 2978, 2990, 49 *L.Ed.*2d 944, 960–961 (1976) and *Roberts v. Louisiana,* 428 *U.S.* 325, 333, 96 *S.Ct.* 3001, 3006, 49 *L.Ed.*2d 974, 981 (1976) respectively, should be equally applicable to the sentencing provisions of *N.J.S.A.* 2C:11–3b of our new Code. Defendant's argument is unpersuasive because of the very clear distinction drawn by the United States Supreme Court between

capital and noncapital cases. In the *Woodson* case, for example, Justice Stewart noted that death was a specialized punishment which differed from all other sanctions in kind, concluding:

> that in *capital cases* the fundamental respect for humanity underlying the Eighth Amendment, (citations omitted), requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the *penalty of death.* [*Id.* at 304, 96 *S.Ct.* at 2991, 49 *L.Ed.*2d at 961 (Emphasis supplied) ].

In both *Woodson* and *Roberts* the Supreme Court mandated individualized sentencing procedures only for capital cases, since the death penalty was viewed as "qualitatively different from a sentence of imprisonment." *Woodson v. North Carolina*, 428 *U.S.* at 305, 96 *S.Ct.* at 2991, 49 *L.Ed.* at 961. *See also Gregg v. Georgia, supra*, 428 *U.S.* at 187, 96 *S.Ct.* at 2931, 49 *L.Ed.*2d at 882. ("There is no question that death as a punishment is unique in its severity and irrevocability."); *State v. Williams*, 93 *N.J.* 39, 61 (1983) (capital punishment is unique and requires the highest standards of fairness). Thus, " 'decisions [in] capital cases are of limited assistance in deciding the constitutionality of the punishment' in a noncapital case." *Solem v. Helm*, 463 *U.S.* 277, 289, 103 *S.Ct.* 3001, 3009, 77 *L.Ed.* 2d 637, 649 (1983) (quoting *Rummel v. Estelle*, 445 *U.S.* 263, 272, 100 *S.Ct.* 1133, 1138, 63 *L.Ed.*2d 382, 390 (1980)).

Pursuant to the New Jersey statutory scheme embodied in *N.J.S.A.* 2C:11-3, an individual convicted of murder may be subjected to capital punishment if the State establishes that "any aggravating factors exist and that all of the aggravating factors outweigh beyond a reasonable doubt all of the mitigating factors." *N.J.S.A.* 2C:11-3c(3)(a) (as amended by *L.* 1985, *c.* 178, § 2, effective June 10, 1985). However, if the jury or the court finds "that no aggravating factors exist, or that all of the aggravating factors which exist do not outweigh all of the mitigating factors," defendant must be sentenced pursuant to *N.J.S.A.* 2C:11-3b. *N.J.S.A.* 2C:11-3c(3)(b) (as amended by *L.* 1985, *c.* 178, § 2, effective June 10, 1985). Therefore, unlike

the statutory schemes in *Woodson* and *Roberts*, our murder statute does not require a mandatory death sentence and adequately allows for individualized sentencing, through the consideration of aggravating and mitigating factors, in capital cases. *See N.J.S.A.* 2C:11–3c(3)(a); *State v. Bass*, 189 *N.J.Super.* 445, 455–458 (Law Div.1983). In noncapital offense cases, such as that here involved, *N.J.S.A.* 2C:11–3b does require the imposition of a mandatory minimum period of incarceration.

Mandatory sentencing schemes, which have not allowed for consideration of individualized factors, have withstood the judicial scrutiny of the courts of this State. In *State v. Corbitt*, 74 *N.J.* 379 (1977), aff'd, 439 *U.S.* 212, 99 *S.Ct.* 492, 58 *L.Ed.*2d 466 (1978), our Supreme Court considered a sentencing scheme which made a life sentence mandatory upon conviction of first degree murder. *See N.J.S.A.* 2A:113–4 (repealed 1979). The *Corbitt* court opined that, from a Fifth and Sixth Amendment constitutional standpoint, "there [could] be no objection to mandatory sentencing for prescribed offenses on conviction after trial, [since this was] a policy matter completely within legislative discretion." 74 *N.J.* at 397. *See also State v. Gantt*, 186 *N.J.Super.* 262, 272 (Law Div.1982), aff'd, 195 *N.J.Super.* 114 (App.Div.1983) (mandatory nature of sentencing scheme provided for in *Graves Act, N.J.S.A.* 2C:43–6c, did not render it constitutionally infirm under Fifth or Sixth Amendments).

Additionally, in *State v. Smith*, 58 *N.J.* 202, 212 (1971), the Supreme Court considered whether the mandatory license forfeiture provision contained within *N.J.S.A.* 2A:170–8 (repealed 1970) amounted to an arbitrary and unusual penalty. Before concluding that the provision was not violative of either Federal or State prohibitions against "cruel and unusual punishment", Justice Francis pitted the offense against the form of punishment, noting that:

> If one is greatly disproportionate to the other, or if the punishment goes beyond what appears to be a reasonable expedient to achieve the public purpose as it may be deduced from the legislation, then the penalty will be condemned. [58 *N.J.* at 212].

Furthermore, the Court asserted that a penalty would be deemed unconstitutional only when, in the face of existing societal conditions, the punishment "shock[ed] the general conscience and violate[d] principles of fundamental fairness." *Id.* *See also State v. Fearick,* 132 *N.J.Super.* 165, 170 (App.Div. 1975), aff'd, 69 *N.J.* 32 (1976) (mandatory custodial sanction of *N.J.S.A.* 39:3–40 did not constitute "cruel and unusual punishment" since it neither shocked the general conscience nor violated fundamental fairness principles).

Recently in *State v. Des Marets,* 92 *N.J.* 62, 81–82 (1983), the Supreme Court was asked to evaluate a claim that a sentence amounted to "cruel and unusual punishment" in violation of our State Constitution. Sentence had been imposed on the defendant pursuant to the *Graves Act, N.J.S.A.* 2C:43–6c, which provides for a mandatory prison sentence, for a term including at least three years of parole ineligibility, for the use or possession of a firearm in the commission of specified offenses. In determining that the sentence imposed was not constitutionally infirm, Chief Justice Wilentz asserted:

> We do not pass on the wisdom of this legislation's mandatory three year imprisonment term or the wisdom of its imposition on the offenses covered. That is a matter solely for the Legislature to decide. Once the Legislature has made that decision, and has made it within constitutional bounds, our sole function is to carry it out. Judges have no business imposing their views of "enlightened" sentencing on society, (citation omitted), including notions of discretionary, individualized treatment, when the Legislature has so clearly opted for mandatory prison terms for all offenders. It may be that the Legislature is more enlightened than the judges. Our clear obligation is to give full effect to the legislative intent, whether we agree or not. [92 *N.J.* at 65–66 (footnotes omitted)].

Applying the tests for "cruel and unusual punishment", which have been judicially created, to the sentencing provision of *N.J.S.A.* 2C:11–3b, the proper inquiry is whether the 30 year mandatory minimum sentence for murder "goes beyond what is necessary to accomplish any legitimate penal aim," *State v. Des Marets, supra,* 92 *N.J.* at 82, or if it is a "reasonable expedient to achieve the public purpose as it may be deduced from the legislation." *State v. Smith, supra,* 58 *N.J.* at 212. There can

be no doubt that "[m]urder is the most heinous and vile offense proscribed by our criminal laws." *State v. Serrone*, 95 *N.J.* 23, 27 (1983). In considering the constitutionality of punishment imposed for this offense, great deference must be given to the Legislature's will, as evidenced by the sentencing statute.

In addition, the Supreme Court has noted that the sentence imposed for any crime must reflect primarily the Legislature's intention to focus on the severity and degree of the crime itself, rather than other individual factors personal to the defendant. *State v. Hodge*, 95 *N.J.* 369, 377 (1984). Therefore, even when aggravating and mitigating factors must be statutorily weighed, "the severity of the crime is ... the single most important factor in the sentencing process." *Id.* at 378–379.

The New Jersey Supreme Court has recognized that the longer sentences and mandatory minimum terms anticipated under the New Jersey Code of Criminal Justice serve to ensure that punitive aspects of a defendant's sentence will be satisfied by the time parole eligibility arrives. *New Jersey Parole Board v. Byrne*, 93 *N.J.* 192, 205 (1983); *In re Trantino Parole Application*, 89 *N.J.* 347, 369 (1982). Thus, the Court has opined that "[d]efendants convicted of crimes can be required to serve a mandatory minimum term before they can be considered for parole." *Id.* at 368. *See also State v. Ivan*, 33 *N.J.* 197, 200 (1960) (Legislature may decree a mandatory sentence, thereby determining that punishment should fit offense, without regard to the circumstances of the offender). Consequently we hold that the mandatory 30 year sentence of *N.J.S.A.* 2C:11–3b is not facially unconstitutional.

Additionally, pitting the offense proscribed by *N.J.S.A.* 2C:11–3b against the extent of punishment provided therein, we find no disproportionality. The punishment does not go beyond what appears to be a reasonable expedient to achieve the public purpose of punishment for an egregious offense. *Cf. State v. Doss*, 60 *N.J.* 32, 35 (1972); *State v. Forcella*, 52 *N.J.* 263 (1968), rev'd *sub nom., Funicello v. New Jersey*, 403 *U.S.* 948,

91 *S.Ct.* 2278, 29 *L.Ed.*2d 859 (1971); *State v. Odom,* 113 *N.J.Super.* 186, 191 (App.Div.1971).

Accordingly, the 30 year minimum sentence for murder prescribed by *N.J.S.A.* 2C:11–3b does not violate the Federal or State constitution.

Affirmed.