**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4312-17T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ALLEN M. KUNZ,

    Defendant-Appellant.

_____

Argued telephonically June 1, 2020 –
Decided June 29, 2020

Before Judges Sumners, Geiger and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 84-04-0403.

John V. Saykanic argued the cause for appellant.

Alicia Christine Gres, Assistant Prosecutor, argued the cause for respondent (Angelo J. Onofri, Mercer County Prosecutor, attorney; Randolph E. Mershon, III, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Allen M. Kunz appeals from an April 27, 2018 Law Division order denying his motion to correct an illegal sentence and his fifth petition for post-conviction relief (PCR). For the reasons that follow, we affirm.

I.

In 1984, at age seventeen, Kunz robbed and murdered his victim with a knife. In a prior opinion, we described the crimes and Kunz's defense as follows:

> Defendant stabbed and killed a storekeeper in the course of robbing her of jewelry, money, and other items. He admitted to various individuals that he had committed the crime. He asked one individual to sell some of the stolen jewelry for him. That individual agreed to do so, except for the ring which bore the victim's name. When defendant was arrested seventeen days after the crime, he had in his possession a PBA card issued in the victim's name. Defendant testified at trial that he had encountered the victim's body the night of the murder and took her purse containing the PBA card along with other items. He admitted trying to sell the jewelry and "bragging" to friends that he had committed the murder. However, he denied that he had actually murdered the victim.
>
> [State v. Kunz, No. A-5970-10 (App. Div. Apr. 9, 2013) (slip op. at 3).]

Kunz was indicted on charges of murder, felony murder, first degree robbery, and possession of a weapon with an unlawful purpose. In March 1985, a jury acquitted Kunz of murder but found him guilty of the other charges. At the sentencing hearing, the court merged the robbery and weapon offenses into

the felony murder conviction and imposed a sentence of life imprisonment with a thirty-year parole-bar.

Kunz appealed his conviction and sentence. We affirmed, and the Supreme Court denied certification. State v. Kunz, No. A-742-85 (App. Div. Nov. 20, 1987), certif. denied, 111 N.J. 622 (1988).

In September 1990, Kunz filed his first PCR petition, alleging that his trial attorney had been ineffective by failing to present a certain theory of the case. After remanding for an evidentiary hearing, we affirmed the denial of the petition, and the Supreme Court denied certification. State v. Kunz, No. A-3917-92 (App. Div. May 10, 1994), certif. denied, 137 N.J. 311 (1994).

Thereafter, Kunz filed petitions for habeas corpus relief in federal court in 1997 and 2016, and three additional PCR petitions in 1998, 2001, and 2011; none were successful. Kunz v. Attorney General of N.J., 2017 WL 44946 (D.N.J. Jan. 4, 2017); State v. Kunz, No. A-5970-10 (App. Div. April 9, 2103), certif. denied, 216 N.J. 14 (2013).

In January 2014, Kunz became eligible for parole. Kunz v. State Parole Bd., No. A-3553-14 (App. Div. Oct. 28, 2016) (slip op. at 2), certif. denied, 230 N.J. 396 (2017). After meeting with a hearing officer, the matter was referred to a two-member panel of the New Jersey State Parole Board (the Board) and

then to the full Board. Ibid. In March 2014, the full Board "denied parole and determined that establishment of a future eligibility term (FET) within the presumptive schedule was clearly inappropriate due to [Kunz's] lack of satisfactory progress in reducing the likelihood of future criminal behavior." Upon further review of "the record in [Kunz's] case, including [the] case file, [and Kunz's] answers and statements from [his] April 11, 2014 Letter of Mitigation," the Board determined that a FET in excess of the administrative guidelines was appropriate and established a 144-month FET, making Kunz eligible for parole in April 2021.

In its comprehensive written Notice of Decision, the Board noted Kunz had committed twenty-seven infractions during his imprisonment. Four of those infractions were serious infractions. The sanctions imposed included 125 days placement in detention, 660 days loss of commutation credit, and 540 days placement in administrative segregation.

The Board found that during his twenty-eight years of incarceration, Kunz: (1) "demonstrated an inability to understand the root causes as to why [he] reacted in a violent criminal manner resulting in the victim's death"; (2) "failed in developing adequate and appropriate insight into recognizing issues that would return [him] to future criminal behavior"; and (3) "failed to

appropriately and adequately address a contributing factor of [his] criminal behavior through specific program participation or by other methods, which would demonstrate satisfactory evidence of rehabilitative progress." The Board stated it was "clear" that the narcotic programs Kunz had thus far attended had given him "little insight" into his addiction. The Board determined that Kunz remained "a substantial threat to public safety."

The FET commenced on Kunz's initial eligibility date of January 26, 2014. The Board explained that the FET "will be reduced by the applicable amount of commutation credit, earned work credit and earned minimum custody credit (should [he] achieve minimum custody status)." This resulted in the FET being "reduced by 1236 days commutation credit." As a result, Kunz's parole eligibility date was August 13, 2022, as of the date of the Board's decision. That date will be further reduced by application of any work credits earned after January 26, 2014. The Board noted that Kunz was earning work credits, and if he continued to do so, "it would result in a projected parole eligibility date in April 2021."

The Board denied Kunz's request for reconsideration. Kunz appealed the denial of parole and 144-month FET.

In January 2016, while his parole denial appeal was pending, Kunz filed a pro se motion to correct an illegal sentence based on a new constitutional rule. He claimed that his sentence was an illegal de facto life sentence prohibited by State v. Zuber, 227 N.J. 422 (2017), and that the sentencing court's findings had thwarted his ability to obtain parole. Kunz subsequently retained private counsel who filed a PCR petition on Kunz's behalf. At oral argument before the motion/PCR court, defense counsel stated that the motion and PCR petition raised the same contentions and requested the same relief.

We affirmed the Board's denial of parole and imposition of a 144-month FET, finding the decision was supported by credible evidence in the record and not arbitrary or capricious. Kunz v. State Parole Bd., slip op. at 3-4. We determined that the Board provided a sufficient explanation for its determination and satisfied the demands of due process. Id., slip. op. at 5-6. We rejected Kunz's arguments that the Board failed to properly consider his age at the time of the crime and the mitigating factors that are part of the record. Ibid.

The trial court heard Kunz's motion and PCR petition on March 16, 2018. By order and written opinion dated April 27, 2018, the court denied both, finding that Kunz's sentence was not the practical equivalent of life without parole and that the sentencing court's findings were not the basis for his parole denial. The

6

court stated that Kunz's "term of incarceration falls far short of the typical sentence that implicates <u>Zuber</u> or <u>Miller</u>."[1] The court noted Kunz had already received a meaningful opportunity to obtain release on parole at age forty-seven, "well in advance of old age."

The court found that the record undercuts Kunz's claim that the sentencing court's statements had the effect of denying him a meaningful opportunity for parole. The court stated that "[t]he Board's rejection of [d]efendant's application for parole does not appear to give any weight to the trial court's sentencing statement. Instead, the Parole Board assigned substantial weight to many of the other [twenty-two] factors that it must consider as a part of its decision-making process."

Additionally, the court found that Kunz's challenges to the sentencing court's findings related to the alleged excessiveness, not the legality, of the sentence, and thus were procedurally barred. The court explained:

> Although felony murder and purposeful and knowing murder are distinct, a [thirty-year] to life term for the crime of felony murder is a permissible sentence. The New Jersey Supreme Court has held that the 'statutory minimum sentence for felony murder is thirty years with thirty years of parole ineligibility; the maximum is a term of years between thirty years and life imprisonment with a mandatory thirty[-]year parole

---

[1] <u>Miller v. Alabama</u>, 567 U.S. 460 (2012)

ineligibility period. State v. McQuaid, 147 N.J. 464, 496 (1997). Moreover, it is well established that an acquittal for purposeful or knowing murder does not bar a life term for felony murder. See, e.g., State v. Arenas, 363 N.J. Super. 1, 7-9 (App. Div. 2003) ([thirty] to life sentence for felony murder after acquittal for purposeful and knowing murder).

The motion/PCR court also rejected Kunz's argument that amendment of the juvenile waiver statute, N.J.S.A. 2A:4A-26.1, which increased the minimum age for waiver to adult court from fourteen to fifteen years old, evinced a legislative intent to treat juveniles differently and shield them from long periods of incarceration. The court held that the statutory amendment did not undermine the validity of Kunz's sentence since he was over the age of fifteen at the time of the offense and would still be subject to waiver under the amended statute.

In this appeal, Kunz raises the following arguments, which we have reorganized and summarized for purposes of our discussion. Kunz asserts that the trial court erred in denying his motion to correct an illegal sentence and PCR petition based on a change in constitutional law. He contends that while the thirty-year parole-bar theoretically gave him the opportunity for parole at age forty-seven, his sentence is nonetheless a de facto life sentence based on the sentencing court's findings that no mitigating factors existed and that he should be removed from society for as long as possible. Kunz maintains that those

findings have inhibited his ability to obtain parole and are inconsistent with the principle that the State must give a juvenile the opportunity to obtain release based on "demonstrated maturity and rehabilitation," citing Graham v. Florida, 560 U.S. 48, 75 (2010). He also claims he is entitled to a resentencing to present the rehabilitative efforts he has taken in prison in addition to information relating to the Miller factors, which the sentencing court never considered. We are unpersuaded by these arguments.

## II.

"A defendant may challenge an illegal sentence at any time." Zuber, 227 N.J. at 437 (citing R. 3:21-10(b)(5); State v. Acevedo, 205 N.J. 40, 47 n.4 (2011)). "[A]n illegal sentence is one that 'exceeds the maximum penalty . . . for a particular offense' or a sentence 'not imposed in accordance with law.'" Acevedo, 205 N.J. at 45 (quoting State v. Murray, 162 N.J. 240, 247 (2000)). "That includes a sentence 'imposed without regard to some constitutional safeguard,'" which defendant claims here. Zuber, 227 N.J. at 437 (quoting State v. Tavares, 286 N.J. Super. 610, 618 (App. Div. 1996)).[2]

---

[2] Rule 3:22-4(b)(2)(A) allows a defendant to file a second or subsequent PCR petition where the defendant alleges a change in constitutional law. However, a challenge to the court's findings in support of a sentence, including allegations of improper consideration of aggravating and mitigating factors, relates to the

In <u>Miller</u>, 567 U.S. at 479, the Supreme Court declared that mandatory life imprisonment without parole for a juvenile sentenced as an adult is unconstitutional under the Eighth Amendment. In so ruling, the Court built upon prior decisions, which had established that "children are constitutionally different from adults for purposes of sentencing" because they "have diminished culpability and greater prospects for reform," and thus "'are less deserving of the most severe punishments.'" <u>Id.</u> at 471 (quoting <u>Graham</u>, 560 U.S. at 68) (holding life imprisonment without parole for a juvenile convicted of a non-homicide offense unconstitutional).

The <u>Miller</u> Court stated that a mandatory life sentence without parole for a juvenile convicted of homicide:

> [1] precludes consideration of [the juvenile's] chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences.
>
> [2] It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional.
>
> [3] It neglects the circumstances of the homicide offense, including the extent of his participation in the

---

excessiveness of the sentence, not to its legality, and is not cognizable on PCR or under <u>Rule</u> 3:21-10(b)(5). <u>Acevedo</u>, 205 N.J. at 47.

conduct and the way familial and peer pressures may have affected him.

[4] Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys.

[5] And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.

[Id. at 477-78.]

We refer to these five aspects of mandatory sentencing as "the Miller factors." Zuber, 227 N.J. at 445.

Miller did not preclude the possibility of a life sentence for a juvenile but reaffirmed the determination it had made in Graham that such a sentence may not be mandatory and should be "uncommon" given a juvenile's "diminished culpability and heightened capacity for change." Miller, 567 U.S. at 479. In the "rare" situation where the juvenile's "crime reflects irreparable corruption" or incorrigibility, the court may impose a life sentence. Id. at 479-80 (quoting Roper v. Simmons, 543 U.S. 551, 573 (2005)).

In Graham, the Court determined that a sentencing court may not make the determination "at the outset" that the juvenile will forever pose a risk to

society. 560 U.S. at 75. The juvenile must have "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Ibid. The Court left the "means and mechanisms for compliance" with its decision to the States. Ibid.

In Montgomery v. Louisiana, the Court determined that Miller was entitled to retroactive effect and held that where a sentence was imposed contrary to Miller, the constitutional infirmity could be remedied by a resentencing or consideration for parole. 577 U.S. ___, 136 S. Ct. 718, 733-36 (2016). The Court explained: "Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity— and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment." Id. at 736.

In Zuber, our Supreme Court extended the holding of Miller to any life sentence without parole or its functional equivalent. 227 N.J. at 447-48. The Court held that when a juvenile tried as an adult and is subject to a lengthy aggregate term amounting to "the practical equivalent of life without parole," the sentencing court must consider the Miller factors in addition to the aggravating and mitigating sentencing factors set forth in N.J.S.A. 2C:44-1(a) and (b). Zuber, 227 N.J. at 429, 445-47, 450. Where consecutive terms are an

12

option, the court must consider the Yarbough[3] factors under "a heightened level of care." Id. at 450. While the Court did not elaborate on the meaning of a "heightened level of care," it couched the statement in terms of the "concerns that Graham and Miller highlight" and the "overriding importance" of Miller. Ibid. Like the Miller Court, the Court in Zuber did not preclude the possibility of a life sentence for a juvenile but instructed that few juveniles should receive de facto life terms because "it is only the 'rare juvenile offender whose crime reflects irreparable corruption.'" Id. at 451 (quoting Miller, 567 U.S. at 479).

The Zuber Court did not define a de facto life term by any specific length and rejected the use of life expectancy tables in deciding whether a lengthy term is effectively a life term. Id. at 450. The Court instructed sentencing courts to consider "the real-time consequences of the aggregate sentence" and held that the aggregate terms at issue in that consolidated case—110 years with a fifty-five-year parole-bar and seventy-five-years with a sixty-eight-year and three-month parole-bar—were the functional equivalent of life terms. Id. at 447, 449, 453.

It suggested the possibility that a lawfully imposed sentence of life, or the functional equivalent of life, may later be rendered unconstitutional by

---

[3] State v. Yarbough, 100 N.J. 627, 643-44 (1985).

A-4312-17T2

subsequent facts that establish reform and rehabilitation before expiration of the parole bar.  Id. at 451-52.  The defendant might "ask the court to review factors that could not be fully assessed when he was originally sentenced—like whether he still fails to appreciate risks and consequences, or whether he may be, or has been, rehabilitated."  Id. at 452 (citing Miller, 567 U.S. at 477).

The Court invited the Legislature to examine this issue, noting "Graham left it to the States 'to explore the means and mechanisms' to give defendants 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.'"  Id. at 452 (quoting Graham, 560 U.S. at 75).

Since Zuber, only one published decision, State v. Bass, has addressed the type of sentence that may qualify as a de facto life term.  457 N.J. Super. 1, 13-14 (App. Div. 2018), certif. denied, 238 N.J. 364 (2019).  We held that a life sentence with a thirty-five-year parole-bar was not the functional equivalent of a life sentence, and thus, the defendant was not entitled to resentencing under Zuber, even though the sentencing court had not considered the Miller factors when it imposed his sentence.  Ibid.  We further held that any rehabilitative actions the defendant had taken while incarcerated were matters for the parole board to consider and did not render the sentence unconstitutional.  Id. at 14. We explained:

> [D]efendant's sentence is not illegal because he now claims to be rehabilitated as a result of his incarceration. We do not minimize defendant's efforts to rehabilitate himself . . . . However, consideration of these accomplishments is exclusively the province of the parole board and not a means of collateral attack on defendant's sentence—which has been affirmed on direct appeal.
>
> [Ibid.]

Here, Kunz received a life sentence subject to a thirty-year parole bar for the felony murder he committed at age seventeen. The sentencing court based the sentence on a finding of aggravating factors one (nature and circumstances of offense), two (gravity and seriousness of the offense), three (risk of reoffending) and nine (need to deter), N.J.S.A. 2C:44-1(a)(1), (2), (3) and (9). The court explained that Kunz's crime was committed in an especially heinous and cruel manner and had caused "horrible suffering by the [victim's young] children" and the rest of her family. The court found a risk of reoffending and need to deter based on Kunz's continued claim of innocence, the nature of the crime, and Kunz's juvenile record, which contained one delinquency adjudication that had resulted in "probation for a year" and confinement at "Jamesburg for an indeterminate term." The court stated, "I think that anyone who is capable of committing as brutal and callous an act as this is capable of doing anything."

The court stated that it had reviewed "very carefully" the mitigating factors and found "that absolutely no mitigating factors" existed. It noted, however, that Kunz was the youngest of six children and that he had attended school only to the tenth grade.

In the judgment of conviction, the court reiterated these findings and added that Kunz not only failed to show remorse but had "bragged about this killing to several people." The court concluded: "It is necessary for the protection of society that this defendant be removed from the outside world for as long a period of time as is possible."

The motion/PCR court found that Kunz's sentence was not the equivalent of a life sentence because he was eligible for parole when he was only forty-seven years old. Thus, his sentence was significantly less than those that had been remanded for resentencing under Zuber, all of which had significantly longer parole-bars.[4] We concur.

---

[4] We have remanded for resentencing where the following lengthy sentences were imposed: 123 years' imprisonment with an eighty-five-percent parole-bar, State v. Olbert, No. A-0496-15 (App. Div. Feb. 7, 2018), certif. denied, 234 N.J. 569 (2018); and 110 years' imprisonment with an eighty-five-percent parole-bar, State v. Weston, No. A-3182-15 (App. Div. Nov. 27, 2017). In State v. Young, No. A-0460-16 (App. Div. Mar. 12 , 2019), certif. denied, 239 N.J. 409, 417 (2019), and State v. Hawkins, No. A-4848-14 (App. Div. Apr. 9, 2018), we remanded for resentencing on direct appeal where the trial courts imposed terms

of fifty-five-years' imprisonment with a parole bar of forty-six years and nine months, explaining that while the sentences were not literally life terms, they closely approached it.  In State v. Zuber, No. A-2677-18 (App. Div. May 6, 2020), we remanded an aggregate term of eighty-six years' imprisonment with forty-three years of parole ineligibility for resentencing because the sentencing court did not adequately explain its basis for imposing consecutive terms under a heightened Yarbough standard.  We did not decide whether the sentence imposed was the functional equivalent of life without parole.

In contrast, we have found the following aggregate terms are not the functional equivalent of life imprisonment:  fifty-five years with a parole ineligibility period of fifty years and three months, State v. Brogsdale, No. A-4782-16 (App. Div. Aug. 8, 2019), certif. denied, 240 N.J. 400 (2020); fifty years with forty-two-and-a-half years of parole ineligibility, State v. Zarate, No. A-2001-17 (App. Div. May 6, 2020); State v. Bethea, No. A-2438-18T3 (App. Div. Apr. 8, 2020); forty years with a thirty-four-year parole-bar, State v. Fitch, No. A-1014-14 (App. Div. Sept. 22, 2017), certif. denied, 232 N.J. 303 (2018); forty years with a thirty-year parole-bar, State v. Anthony, No. A-4429-18 (App. Div. June 10, 2020); life with a thirty-year parole-bar, State v. Harmon, No. A-0944-17 (App. Div. May 20, 2019); State v. Takuma, No. A-1928-16 (App. Div. July 6, 2018), certif. denied, 236 N.J. 469 (2019); State v. Torres, No. A-2225-15 (App. Div. Feb. 27, 2018), certif. denied, 236 N.J. 61 (2018); State v. Nixon, No. A-4073-15 (App. Div. Dec. 14, 2017), certif. denied, 233 N.J. 322 (2018); twenty-five years with an eighty-five-percent parole-bar, State v. Gonzalez, No. A-2784-14 (App. Div. May 31, 2017), certif. denied, 231 N.J. 186 (2017).  In State v. Comer, No. A-1230-18 (App. Div. May 6, 2020), we upheld a sentence of thirty years' imprisonment with a thirty-year parole-bar as constitutional as applied to juveniles tried as adults without specifically ruling that the sentence was the not the functional equivalent of life without parole.

We recognize that these unpublished opinions do not constitute precedent and are not binding.  R. 1:36-3.  We provide this comparative survey of our recent decisions that determined whether the lengthy sentences imposed on juveniles were the functional equivalent of life without parole to provide meaningful context to the reader.

We adhere to our analysis in State v. Pratt, 226 N.J. Super. 307 (App. Div. 1988) that upheld the constitutionality of the thirty-year mandatory minimum sentence as applied to offenders who commit murder under the age of eighteen. Pratt was waived to adult court and convicted of two weapons offenses and murder for a homicide he committed at age fifteen. Id. at 308-09. The trial court sentenced him to a thirty-year term without parole and imposed concurrent terms for the weapons offenses. Id. at 309.

On appeal, Pratt argued the statutory minimum of thirty years' imprisonment without parole constituted cruel and unusual punishment as applied to a juvenile because "it fails to accord individualized sentencing treatment to juveniles." Id. at 325. We rejected that argument, relying on State v. Johnson, 206 N.J. Super. 341 (App. Div. 1985), which held the statutory thirty-year mandatory minimum did not constitute cruel and unusual punishment as applied to adults. Pratt, 226 N.J. Super. at 324. In Johnson, we noted that our case law has held the mandatory term for felony murder does not exceed "what appears to be a reasonable expedient to achieve the public purpose of punishment for an egregious offense." Johnson, 206 N.J. Super. at 348. In Pratt we held that the same rationale applied where the defendant was a juvenile tried and convicted as an adult. Pratt, 226 N.J. Super. at 324.

Although we recognize that Pratt was issued years before Graham, Miller, Montgomery, and Zuber, it is directly on point and remains good law as to prison terms that are not the substantial equivalent of life without parole. Further, a thirty-year parole bar is far from a de facto life sentence, particularly as applied to a juvenile who will be eligible for parole no later than age forty-seven. In the absence of a premature death, he or she will have an opportunity for some meaningful years outside of prison. See Graham, 560 U.S. at 75.

As we have noted, Kunz was first eligible for parole at age 47 in 2014. While the FET delayed future parole eligibility, Kunz is eligible for parole no later than August 13, 2022, when he will be fifty-five years old—assuming he avoids committing additional infractions resulting in loss of commutation credits. He may be eligible for parole in April 2021 if he continues to earn work credits. We therefore conclude that his sentence does not amount to life without parole or its functional equivalent even if we include the FET imposed by the Board.

Kunz argues that the sentencing court's comments during the sentencing hearing, and in the judgment of conviction, that he should be removed from society for as long as possible have inhibited his ability to obtain parole, resulting in a de facto life sentence. We are unpersuaded by this argument.

Kunz speculates that the sentencing court's comments affected the Board's decision to deny parole and impose the FET. The record does not support that contention. Noticeably absent from the Board's comprehensive Notice of Decision is any mention of the sentencing court's comments. Instead, the Board focused on his conduct while imprisoned. This included twenty-seven infractions; Kunz's insufficient problem resolution; his failure to develop needed insight into his criminal behavior; and his failure to adequately address his substance abuse issues.

Defendant's remaining arguments are without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2).

In sum, Kunz did not receive the functional equivalent of life without parole. Therefore, he is not entitled to resentencing under Zuber. His parole denial and FET were based on his misconduct in prison, not on the sentencing court's findings and statements. Additionally, his sentence was not illegal. State v. McQuaid, 147 N.J. 464, 496 (1997); State v. Arenas, 363 N.J. Super. 1, 7-9 (App. Div. 2003). The challenge to the sentencing court's findings relates to the excessiveness of his sentence and is procedurally barred because it may only be raised on direct appeal. Acevedo, 205 N.J. at 47.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

20

A-4312-17T2