**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0735-16T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

FARARHD H. GUNTER, a/k/a
SHAMILL ABDULLAH, ANTWAN
GUNTER, FARAHD GUNTER, FARHAD
GUNTER, FARRARHD GUNTER,
HAKIM GUNTER, SAMAD GUNTER,
SAMMAD GUNTER, FARHAD GUNTHRE,
FAROD JOHNSON, FARROD JONES,
and JAMAR WILLIAMS,

    Defendant-Appellant.

_____

        Submitted May 1, 2018 — Decided June 22, 2018

        Before Judges Moynihan and Natali.

        On appeal from Superior Court of New Jersey,
        Law Division, Hudson County, Indictment No.
        14-02-0285.

        Joseph E. Krakora, Public Defender, attorney
        for appellant (Stephen P. Hunter, Assistant
        Deputy Public Defender, of counsel and on the
        brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Svjetlana Tesic, Assistant Prosecutor, on the briefs).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Fararhd H. Gunter appeals from his convictions by jury for first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1) (count one);[1] first-degree felony murder, N.J.S.A. 2C:11-3(a)(3) (count two); first-degree armed robbery, N.J.S.A. 2C:15-1 (count three); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (count four); second-degree possession of weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count five); second-degree armed robbery, N.J.S.A. 2C:15-1 (count nine); and second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count ten), contending:

> POINT I
>
> THE STATEMENT OF CO-DEFENDANT HARRIS INCULPATING DEFENDANT WAS NOT IN FURTHERANCE OF THE CONSPIRACY AND SHOULD HAVE BEEN EXCLUDED ON DEFENSE COUNSEL'S OBJECTION. THE IMPROPER ADMISSION OF THIS BRUTON[2]-TYPE EVIDENCE DENIED DEFENDANT A FAIR TRIAL AND REQUIRES REVERSAL.

---

[1] The jury found defendant not guilty of murder — the indicted charge — but found him guilty of the lesser-included charge of aggravated manslaughter.

[2] Bruton v. United States, 391 U.S. 123 (1968).

POINT II

WHILE THE DENIAL OF THE DEFENSE MOTION FOR
SEVERANCE WAS REASONABLE, A SPECIFIC CHARGE
TO THE JURY ON PROPENSITY, AS THE TRIAL COURT
INITIALLY STATED WOULD BE GIVEN, WAS
NECESSARY.  WHEN THE TRIAL COURT FAILED TO
GIVE ANY SUCH INSTRUCTION, THE DEFENDANT WAS
DENIED DUE PROCESS AND A FAIR TRIAL.

POINT III

IT IS CRUEL AND UNUSUAL PUNISHMENT THAT A
FELONY MURDER CONVICTION LEADS TO A GREATER
SENTENCE THAN AGGRAVATED MANSLAUGHTER BECAUSE
IT IS GROSSLY DISPROPORTIONATE AND IT SERVES
NO LEGITIMATE PENOLOGICAL OBJECTIVE TO PUNISH
A NEGLIGENT HOMICIDE MORE SEVERELY THAN A
RECKLESS HOMICIDE.

POINT IV

THE SENTENCE WAS EXCESSIVE.

In his pro se brief, he adds:

POINT I

DEFENDANT IS ENTITLED TO A NEW TRIAL BECAUSE
HE WAS DENIED RIGHT TO CONFRONTATION WHEN THE
STATE'S MAIN WITNESS GAVE A TESTIMONIAL
STATEMENT AGAINST DEFENDANT MADE BY A NON-
TESTIFYING CO-DEFENDANT IN VIOLATION OF THE
SIXTH AMENDMENT TO THE UNITED STATES
CONSTITUTION AND ARTICLE I, PARAGRAPH 10 OF
THE NEW JERSEY CONSTITUTION OF 1947.

POINT II

DEFENDANT IS ENTITLED TO A NEW TRIAL DUE TO
THE STATE['S] USE OF IMPERMISSIBLY SUGGESTIVE
OUT-OF-COURT IDENTIFICATION PROCEDURES ON THE
LONE EYEWITNESS IN VIOLATION IN VIOLATION OF
THE PROCEDURES SET FOR IN STATE V. HENDERSON,

208 N.J. 208 (2011); THE U.S. CONSTITUTION AND
THE N.J. CONSTITUTION.

Two incidents in Jersey City during the evening of May 17, 2013, form the basis for the charges — indicted and tried together — against defendant and codefendants Shawn Harris and Janice Everett. In the earlier incident, a twelve-year-old boy was shot and killed and his father suffered a gunshot wound to his leg during a robbery. Later that evening, a victim was shot after he followed and yelled at two men who had just robbed him and another victim at gunpoint as the victims sat in a car.

I

Defendant challenges the admission of Harris's statement, related by Everett. During her trial testimony, Everett testified that prior to the robberies, Harris — who was driving her car — picked her up from her workplace. Later that afternoon, they met defendant, who she knew as "Slim," and the codefendants drove to Jersey City. Harris told Everett they were "going to take a run," which, based on Harris's prior explanation of the phrase, informed her they were going to "rob somebody."

Everett said she remained in the car while Harris and defendant committed the first robbery. When the two men reentered the car Harris said, "This idiot back here [meaning the rear-seated defendant] did something stupid."

Defense counsel lodged a hearsay objection just prior to the State's elicitation of Harris's statement.[3] When, at sidebar, the State argued the statement was admissible as that of a coconspirator, defense counsel countered, "I don't think we even get to that Judge, it certainly is more prejudicial than -- I agree with [the assistant prosecutor] that [Harris] is a coconspirator, I have no argument." Notwithstanding defense counsel's seeming concession that the statement was admissible under N.J.R.E. 803(b)(5),[4] the judge recalled Everett's testimony at the N.J.R.E. 104(c) hearing regarding the admissibility of defendant's statements, and ruled

> [Everett] was there, . . . she knew it was going to be a robbery. This was an ongoing conspiracy, the statement was made it appears to be immediately after and during the f[l]ight from. And what I also understand is going to be . . . before another robbery occurs. So I find that the statement is made during the ongoing course of the conspiracy.

Defendant, for the first time, advances that Harris's statement was inadmissible because it was not made in furtherance of the conspiracy. Our usual standard of review requires that we

---

[3] Harris did not testify.

[4] N.J.R.E. 803(b)(5) provides that the hearsay rule does not exclude "[a] statement offered against a party which is . . . a statement made at the time the party and the declarant were participating in a plan to commit a crime or civil wrong and the statement was made in furtherance of that plan."

A-0735-16T3

grant substantial deference to the trial court's evidentiary rulings, State v. Morton, 155 N.J. 383, 453 (1998); State v. McDougald, 120 N.J. 523, 577-78 (1990), and will reverse a trial court's evidentiary rulings only where there is an abuse of discretion, State v. Nelson, 173 N.J. 417, 470 (2002); State v. Feaster, 156 N.J. 1, 82 (1998).  If in response to objection the trial court did not analyze evidence under the applicable rules of admissibility, our standard of review is plenary.  See State v. Lykes, 192 N.J. 519 (2007).  Where defendant failed to object at trial and raises an evidentiary issue for the first time on appeal, we apply the plain error standard of review.  See R. 2:10-2; State v. Hunt, 115 N.J. 330, 363 (1989); State v. Macon, 57 N.J. 325, 337-38 (1971).

Requisite to admission as a coconspirator's statement under N.J.R.E. 803(b)(5), is the State's proof that "(1) the statement was 'made in furtherance of the conspiracy'; (2) the statement was 'made during the course of the conspiracy'; and (3) there is 'evidence, independent of the hearsay, of the existence of the conspiracy and [the] defendant's relationship to it.'" State v. Cagno, 211 N.J. 488, 529-30 (2012) (alteration in original)

A-0735-16T3

(quoting State v. Taccetta, 301 N.J. Super. 227, 251 (App. Div. 1997)).[5]

It is longstanding hornbook law that "where it appears that two or more persons have conspired to commit an offense, everything said, done, or written by one of them during the existence of the conspiracy, and in the execution or furtherance of the common purpose, is admissible in evidence against the others." 16 C.J. § 1283 (1918) (footnotes omitted); see State v. Seidman, 107 N.J.L. 204, 206-07 (Sup. Ct. 1931), aff'd sub nom., State v. Fischman, 108 N.J.L. 550 (E. & A. 1931). Although post-conspiratorial statements are not admissible against a defendant, State v. Sparano, 249 N.J. Super. 411, 420-21 (App. Div. 1991), a conspiracy may extend beyond the actual commission of a crime when the conspirators make statements to enlist false alibi witnesses, conceal weapons, or flee to avoid apprehension, State v. Savage, 172 N.J. 374, 403 (2002). Even statements relating to past events that "serve some current purpose, such as to promote cohesiveness, provide reassurance to a co-conspirator, or prompt one not a member of the conspiracy to respond in a way that furthers the goals of

---

[5] The trial judge's brief sidebar ruling addressed only the second of the three factors. Defendant argues only that the first factor was not established.

the conspiracy" may be deemed to be in furtherance of a conspiracy. Taccetta, 301 N.J. Super. at 253.

The record supports that Harris's statement to Everett related to the ongoing crime. Harris and defendant fled from the murder-robbery scene directly to Everett's car. There Everett — knowing the men were going to commit a robbery — waited in the driver's seat. Startled when the men entered the vehicle, she noted Harris was "shaking and sweating and he looked angry." After Harris told Everett that defendant "did something stupid," Everett "panicked and . . . asked what happened." Defendant then said, "I shot 'em." Everett smelled gunpowder and turned toward defendant and saw a gun in his lap. Defendant then said, "They wouldn't give it up"; and "he'll live." Harris then told Everett to drive. When she stopped at a light, Harris made her move to the rear seat, and he drove.[6]

Harris's statement was part of the post-murder-robbery events. The recount by Harris and defendant brought Everett up to speed on what transpired, including defendant's fatal actions, and led to her driving them from the scene, furthering the

---

[6] The same course was followed after the second robbery when Everett drove the men from the scene for a short distance; she then switched seats and Harris drove.

conspiracy by avoiding detection or apprehension.[7]  See Hunt, 115 N.J. at 342, 367 (holding co-conspirator's statement to his girlfriend that the defendant killed someone was made in furtherance of and during the course of the conspiracy because the co-conspirator sought his girlfriend's "help in disposing of the evidence of the murder").

We reject defendant's contention that Harris's statement was akin to the "idle chatter" deemed inadmissible in State v. Farthing, 331 N.J. Super. 58, 84 (App. Div. 2000).  The statement in issue was not made to someone unrelated to the crime, and it was not an after-the-fact narration, but part of the conversation among the participants during flight from the crime.

We find no error in the admission of Harris's statement pursuant to N.J.R.E. 803(b)(5).[8]  In light of our holding, we determine that defendant's arguments in Point I of his pro se

---

[7] Although the trial judge mentioned the second robbery during his ruling, we see no evidence that the second robbery had been discussed or planned; and certainly no evidence that Harris's statement furthered that robbery.

[8] Even if the challenged testimony was erroneously admitted, the error was harmless, see Macon, 57 N.J. at 337-38; R. 2:10-2, in light of statements made by defendant.  Harris's statement did not, as did defendant's, indicate what defendant did.  Defendant's admissions abated any prejudice caused by the admission of Harris's statement.

brief are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

## II

Defendant concedes the trial court correctly denied his motion for relief from the joinder of both incidents, but contends he was denied a fair trial because the court failed to give a "propensity" jury instruction, one that was never requested by defense counsel.  There is no merit to his contention.

We review errors in a jury instruction not raised at the time of trial for "legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result."  State v. Hock, 54 N.J. 526, 538 (1969).  Plain error is reversible if it is "clearly capable of producing an unjust result."  R. 2:10-2; see Hunt, 115 N.J. at 363.

In determining the severance motion, the trial court analyzed "whether the evidence from one offense would have been admissible N.J.R.E. 404(b)[9] evidence in the trial of the other offense,

_____

[9] The four factors considered in determining admissibility under N.J.R.E. 404(b) are:

because '[i]f the evidence would be admissible at both trials, then . . . a defendant will not suffer any more prejudice in a joint trial than he would in separate trials.'" State v. Sterling, 215 N.J. 65, 98 (2013) (second and third alterations in original) (quoting State v. Chenique-Puey, 145 N.J. 334, 341 (1996)). It is true that admission of evidence pursuant to N.J.R.E. 404(b) requires that a jury instruction be given by the trial court to "explain precisely the permitted and prohibited purposes of the evidence, with sufficient reference to the factual context of the case to enable the jury to comprehend and appreciate the fine distinction to which it is required to adhere." State v. Cofield, 127 N.J. 328, 341 (1992) (quoting State v. Stevens, 115 N.J. 289, 304 (1989)). But defendant conflates the court's consideration of the Cofield factors used in determining the severance motion with the necessity for a jury instruction once other-crime evidence

---

1. The evidence of the other crime must be admissible as relevant to a material issue;

2. It must be similar in kind and reasonably close in time to the offense charged;

3. The evidence of the other crime must be clear and convincing; and

4. The probative value of the evidence must not be outweighed by its apparent prejudice.

[State v. Cofield, 127 N.J. 328, 338 (1992)].

is admitted after an analysis under the same factors. Although the judge applied the <u>Cofield</u> test in determining the severance issue, evidence was not admitted under N.J.R.E. 404(b). No limiting instruction was therefore required.

III

Defendant raises for the first time that "[i]t is cruel and unusual punishment that a felony murder conviction leads to a greater sentence than aggravated manslaughter because it is grossly disproportionate and it serves no legitimate penological objective to punish a negligent homicide more severely than a reckless homicide." We determine defendant's comparison of the sentence for felony murder to that for a "negligent homicide" to be without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2). We add only the following comments.

New Jersey's Criminal Code does not recognize "negligent homicide."[10] Further, defendant did not commit a negligent homicide. The jury convicted him of aggravated manslaughter so it found he recklessly caused the victim's death under circumstances manifesting extreme indifference to human life. N.J.S.A. 2C:11-4(a).

---

[10] N.J.S.A. 2C:11-2(a) provides "[a] person is guilty of criminal homicide if he purposely, knowingly, recklessly or" by driving a vehicle or vessel recklessly, causes a homicide. <u>See</u> N.J.S.A. 2C:11-5.

12

Moreover, defendant is mixing apples and oranges in attempting to compare a sentence for aggravated manslaughter to a sentence for murder. "Felony murder is an absolute-liability crime because the actor need not have contemplated or consciously risked the victim's death." State v. McClain, 263 N.J. Super. 488, 491-92 (App. Div. 1993) (citing State v. Martin, 119 N.J. 2, 20 (1990)). The State need only prove the defendant's mental state for the underlying felony set forth in N.J.S.A. 2C:11-3(a)(3), State v. Darby, 200 N.J. Super. 327, 330-32 (App. Div. 1984); not the defendant's mental state for the homicide — which the Legislature deemed a murder, not a manslaughter.

We have previously held the mandated imposition of a minimum period of thirty years parole ineligibility for felony murder violates neither the Federal nor New Jersey constitutions, State v. Johnson, 206 N.J. Super. 341, 349 (App. Div. 1985), holding:

> It is firmly settled that the broad power to declare what shall constitute criminal conduct and to fix both the maximum and minimum terms of imprisonment for such conduct has been committed by the people of this State to the legislative, rather than to the judicial branch of government. State v. Hampton, 61 N.J. 250, 273 (1972). See also State v. Smith, 58 N.J. 202, 211 (1971). The fact that our Legislature has provided a more severe punishment for criminal acts than the courts approve is no grounds for judicial interference, unless a constitutional or other prohibition against such punishment has been violated. In making this determination, our

13

> Supreme Court in <u>State v. Hampton</u>, expressed the view that "courts consider whether the nature of the criticized punishment is such as to shock the general conscience and to violate principles of fundamental fairness; whether comparison shows the punishment to be grossly disproportionate to the offense, and whether the punishment goes beyond what is necessary to accomplish any legitimate penal aim." 61 N.J. at 273-[]74. Thus, "[a]bsent such a showing[,] the judiciary must respect the legislative will." <u>Id.</u> at 274.
>
> [<u>Johnson</u>, 206 N.J. Super. at 343 (second alteration in original).]

Defendant has made no such showing.

IV

Defendant asserts his life sentence for felony murder is excessive because the judge improperly focused "on generally deterring society's ills by sending a message that the [c]ourt will not tolerate these kinds of crimes, as opposed to a specific deterrence of defendant," and "found that defendant's lack of remorse was a significant factor." We are unpersuaded.

Contrary to defendant's one-sided interpretation of the sentencing judge's remarks, the record shows the judge addressed both of the "two 'interrelated but distinguishable concepts,' [incorporated in deterrence under N.J.S.A. 2C:44-1(a)(9)], the sentence's 'general deterrent effect on the public [and] its personal deterrent effect on the defendant.'" <u>State v. Fuentes</u>, 217 N.J. 57, 79 (2014) (second alteration in original) (quoting

14

<u>State v. Jarbath</u>, 114 N.J. 394, 405 (1989)).  As acknowledged by defendant in his merits brief, the judge observed

> there's truly something wrong with our society when a father can't stand on the street and throw a ball back and forth with his son and hang out with his friends.  There's something wrong with our society when a couple guys can't hang out with their friends on the street corner on a nice evening without being victimized.

He harkened to those comments when, in finding that the need to deter defendant was "overwhelming in this case," he said: "Because something is wrong when somebody like you can go out and victimize innocent people that are standing out doing absolutely nothing wrong."  The judge pointed to the criminal acts defendant committed in both incidents, thereby addressing a specific need to deter in addition to the general need that defendant concedes was established.

And contrary to defendant's contention, the judge's comments on defendant's remorse did not address aggravating factors; rather he — as was required — addressed defense counsel's advancement of remorse as a mitigating factor.  See <u>State v. Blackmon</u>, 202 N.J. 283, 297 (2010) ("[M]itigating factors that are suggested in the record, or are called to the court's attention, ordinarily should be considered and either embraced or rejected on the record.").

15

Defendant in his pro se brief argues for a new trial because the State introduced at trial what he now claims was an impermissibly suggestive out-of-court identification by Curtis Small who selected defendant's photograph from a six-photo array which "had pictures that were of poor quality, so much so that Small could not tell the accurate skin complexion of the subject." Defendant contends the "[t]rial [c]ourt was mandated to conduct a Wade[11] hearing" to determine the admissibility of Small's identification.

Defendant never pursued a motion to suppress Small's identification. Although there is mention in the record that defendant filed a pro se motion to suppress,[12] and defense counsel advised the court at the pretrial conference[13] that he would file such a motion and accompanying brief, we do not see that one was filed despite the judge's scheduling order for briefs and oral argument. As such, we decline to consider this issue that was not presented to the trial court. State v. Robinson, 200 N.J. 1, 19 (2009).

---

[11] United States v. Wade, 388 U.S. 218 (1967).

[12] The record on appeal contains neither a copy of the pro se motion nor the array shown to Small.

[13] R. 3:9-1(f).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

17

A-0735-16T3