**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1230-18T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JAMES COMER, a/k/a
JAMES B. COMER,
JAMES F. COMER, and
JAMESA COMER,

     Defendant-Appellant.

_____

              Argued telephonically March 23, 2020 –
              Decided May 6, 2020

              Before Judges Sabatino, Sumners and Geiger.

              On appeal from the Superior Court of New Jersey, Law
              Division, Essex County, Indictment No. 03-01-0231.

              Lawrence S. Lustberg argued the cause for appellant
              (Gibbons, PC, and American Civil Liberties Union
              New Jersey Foundation, attorneys; Lawrence S.
              Lustberg, Avram D. Frey and Alexander Shalom, on the
              briefs).

Frank J. Ducoat, Special Deputy Attorney General/ Acting Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens II, Acting Essex County Prosecutor, attorney; Frank J. Ducoat, of counsel and on the brief).

Alicia J. Hubbard, Assistant Deputy Public Defender, argued the cause for amicus curiae the New Jersey Office of the Public Defender (Joseph E. Krakora, Public Defender, attorney; Alicia J. Hubbard, of counsel and on the brief).

Jennifer E. Kmieciak, Deputy Attorney General, argued the cause for amicus curiae the Office of the Attorney General (Gurbir S. Grewal, Attorney General, attorney; Jennifer E. Kmieciak, of counsel and on the brief).

PER CURIAM

This juvenile offender sentencing case[1] involving defendant James Comer was the companion matter heard and decided by the New Jersey Supreme Court in State v. Ricky Zuber, 227 N.J. 422, cert. denied, ___ U.S. ___, 138 S. Ct. 152 (2017).  In its consolidated opinion, the Court remanded Comer's case to the trial court for resentencing, to be conducted with adherence to certain youth-related mitigating principles under the Eighth Amendment of the United States Constitution.  Id. at 453.

---

[1]  This appeal was argued back to back with Zuber's own post-remand appeal, A-2677-18, and with another juvenile offender murder case, State v. James Zarate, A-2001-17, which poses some related Eighth Amendment issues.  We issue opinions in all three cases today.

On resentencing, the trial court re-imposed on Comer the statutory minimum of a thirty-year custodial sentence for first-degree felony murder, as mandated by N.J.S.A. 2C:11-3(a)(3). The trial court made concurrent other related offenses that had been previously imposed on Comer.

Comer now appeals, principally arguing that our State's mandatory minimum sentence of thirty years for murder, when it is imposed upon a juvenile offender such as him who is tried as an adult, violates the Eighth Amendment and contemporary penological standards.

We affirm. We reject Comer's argument of unconstitutionality, adhering to our earlier precedential opinion in State v. Pratt, 226 N.J. Super. 307 (App. Div.), certif. denied, 114 N.J. 314 (1988) that upheld the thirty-year mandatory minimum sentence as applied to offenders who commit murder under the age of eighteen. In doing so, we recognize the Legislature has the policy prerogative to amend the statute to abate the sentencing impact upon juvenile offenders, and that bills have been introduced in recent years proposing to do so.

I.

A.

The Supreme Court in Zuber summarized the facts underlying Comer's convictions:

A-1230-18T2

> Defendant James Comer participated in four armed robberies in the evening of April 17 and the early morning of April 18, 2000. During the second robbery, Ibn Adams, an accomplice, shot and killed a victim [George T. Paul]. Comer was seventeen years old at the time of the robberies.
>
> [Zuber, 227 N.J. at 433.]

A grand jury charged Comer and Adams in an indictment that contained the following eighteen counts:

- count one -- conspiracy to commit robbery, contrary to N.J.S.A. 2C:5-2;

- count two -- purposeful and knowing murder, contrary to N.J.S.A. 2C:11-3(a)(1) and (2) (applicable to Adams only);

- count three -- felony murder, contrary to N.J.S.A. 2C:11-3(a)(3);

- count four -- first-degree robbery of Paul, contrary to N.J.S.A. 2C:15-1;

- count five -- possession of a firearm (a handgun) without a permit, contrary to N.J.S.A. 2C:39-5(b);

- count six -- possession of a weapon (a handgun) with the intention to use it unlawfully against another, contrary to N.J.S.A. 2C:39-4(a);

- count seven -- first-degree robbery of Daru Abernathy, contrary to N.J.S.A. 2C:15-1;

- count eight -- possession of a firearm (a handgun) without a permit, contrary to N.J.S.A. 2C:39-5(b);

- count nine -- possession of a weapon (a handgun) with the intention to use it unlawfully against another, contrary to N.J.S.A. 2C:39-4(a);

- count ten -- first-degree robbery of Alison Adebola, contrary to N.J.S.A.

2C:15-1;

- count eleven -- possession of a firearm (a handgun) without a permit, contrary to N.J.S.A. 2C:39-5(b);

- count twelve -- possession of a weapon (a handgun) with the intention to use it unlawfully against another, contrary to N.J.S.A. 2C:39-4(a);

- count thirteen -- first-degree robbery of Tasandra Wright, contrary to N.J.S.A. 2C:15-1;

- count fourteen -- possession of a firearm (a handgun) without a permit, contrary to N.J.S.A. 2C:39-5(b);

- count fifteen -- possession of a weapon (a handgun) with the intention to use it unlawfully against another, contrary to N.J.S.A. 2C:39-4(a);

- count sixteen -- theft of a 1994 Honda automobile, contrary to N.J.S.A. 2C:20-3(a);

- count seventeen -- possession of a firearm (a .380 caliber handgun) without a permit, contrary to N.J.S.A. 2C:39-5(b); and

- count eighteen -- possession of a firearm (a .25 caliber handgun) without a permit, contrary to N.J.S.A. 2C:39-5(b).

Comer was prosecuted for these offenses as an adult. After a joint trial with Adams, a jury found Comer guilty of all of the counts related to the robberies, including the one count of felony murder.

The Court summarized in Zuber the corresponding sentences originally imposed on Comer:

(1) 30 years' imprisonment with 30 years of parole ineligibility for first-degree felony murder, N.J.S.A. 2C:11–3(a)(3);

(2–4) three consecutive terms of 15 years' imprisonment with an 85 percent period of parole ineligibility for three counts of first-degree armed robbery, N.J.S.A. 2C:15–1;
 (5–9) five concurrent terms of 4 years' imprisonment for weapons offenses, N.J.S.A. 2C:39–5(b);

(10) one concurrent term of 4 years' imprisonment for theft, N.J.S.A. 2C:20–3(a).

[Id. at 433.]

All told, Comer's aggregate sentence was 75 years in prison with 68 years and 3 months of parole ineligibility. Based on that original sentence, Comer would not be eligible for parole until 2068, when he would be eighty-five years old. Ibid.

Comer filed a direct appeal challenging his convictions and arguing his sentence was excessive. Ibid. We upheld his convictions and sentence in 2006, a ruling which the Supreme Court affirmed. State v. Adams, 194 N.J. 186, 191 (2008).

Comer thereafter filed a petition for post-conviction relief in 2008, in which he contested his consecutive sentences and raised several other claims. The trial court denied relief. We remanded for an evidentiary hearing. State v. Comer, No. A-1675-10 (App. Div. Oct. 23, 2012). The trial court conducted the

hearing, and again denied relief, an outcome which we affirmed. State v. Comer, No. A-2725-15 (App. Div. Dec. 30, 2015).

By this point, Comer sought to gain relief based on the series of United States Supreme Court opinions holding that, under the Eighth Amendment, the sentencing of offenders who commit crimes as minors must take into account the special characteristics of their immaturity. See, e.g., Graham v. Florida, 560 U.S. 48 (2010) (holding that sentencing a juvenile offender to life in prison without parole for a non-homicide offense violates the Cruel and Unusual Punishment Clause of the Eighth Amendment), and Miller v. Alabama, 567 U.S. 460, 479-80 (2012) (holding that, to comply with the Eighth Amendment, youth and its attendant characteristics must be considered when sentencing a juvenile to life without parole in homicide cases).

As the Court recounted these developments:

> In 2014, Comer filed a motion to correct an illegal sentence. He argued that his sentence amounted to life without parole, and was therefore illegal under Graham and Miller. When Comer was first sentenced in 2004, the trial judge was not required to evaluate the mitigating effects of youth, which Miller later addressed. In a detailed written opinion, the same trial judge concluded in 2014 that, because he had not considered the Miller factors, Comer was entitled to be resentenced.
>
> [Zuber, 227 N.J. at 434.]

The Supreme Court granted Comer's motion for direct certification of the trial court's 2014 judgment. State v. Comer, 226 N.J. 205 (2016). Because an appeal by Zuber posed related issues, the Court consolidated the cases in a single opinion. Zuber, 227 N.J. at 434.

The Court's opinion in Zuber explained in depth the analysis and consequences of the United States Supreme Court's recent decisions in this arena of Eighth Amendment jurisprudence. In particular, the Court highlighted the need for judges who sentence minors who have been waived up and convicted of serious adult crimes to take into account the mitigating factors of youth delineated in Graham, Miller, and their progeny. The Court found that Comer was entitled to resentencing under Miller because his lengthy sentence was a de facto life term. Id. at 448.

The Court remanded Comer's case to the trial court with these instructions, which were likewise applicable to Zuber:

> At a new sentencing hearing, the trial court should consider the Miller factors when it determines the length of his sentence and when it decides whether the counts of conviction should run consecutively. In short, the court should consider factors such as defendant's "immaturity, impetuosity, and failure to appreciate risks and consequences"; "family and home environment"; family and peer pressures; "inability to deal with police officers or prosecutors" or his own attorney; and "the possibility of rehabilitation." [citation omitted] The sentencing judge should also

"view defendant as he stands before the court" at resentencing and consider any rehabilitative efforts since his original sentence. State v. Randolph, 210 N.J. 330, 354 (2012).

[Id. at 453].

On remand from the Supreme Court, the trial court in October 2018 reconsidered Comer's aggregate sentence. After considering the Miller factors and finding statutory aggravating factors three (risk of reoffending), N.J.S.A. 2C:44-1(a)(3), and nine (need for deterrence), N.J.S.A. 2C:44-1(a)(9), the court re-imposed the minimum 30-year term with a 30-year parole disqualifier on the felony murder count, plus the following concurrent terms of imprisonment:

- 4 years on count five;

- 15 years on count seven with an 85% parole bar, pursuant to the No Early Release Act ("NERA"), N.J.S.A. 2C:43-7.2;

- 4 years on count eight;

- 15 years on count ten with an 85% percent NERA parole bar and a 50% Graves Act parole bar under N.J.S.A. 2C:43-6(c);

- 4 years on count eleven;

- 15 years on count thirteen with an 85% NERA parole bar and a 50% Graves Act parole bar;

- 4 years on count fourteen;

- 4 years on count sixteen; and

- 4 years on count seventeen.

The court merged the remaining counts.

The net result of the resentencing is that it made concurrent all of the consecutive prison terms that had been previously stacked upon Comer's mandatory 30-year sentence for felony murder. Under that revised sentence, Comer is now eligible for release after serving 30 years, rather than the previously imposed 68 years and 3 months of parole ineligibility. It is obvious that Comer thereby received an enormous "real time" benefit from the application of the Miller factors.

Nonetheless, Comer pursues his present appeal, this time making a more generic argument. He contends that the mandatory minimum sentence of thirty years prescribed by N.J.S.A. 2C:11-3(b)(1) is unconstitutional when applied to juvenile offenders. Comer is joined in this contention by the Office of the Public Defender and the American Civil Liberties Union as amici. The contention is opposed by the Essex County Prosecutor on behalf of the State, and also by the Attorney General as amicus.

B.

Specifically, Comer raises the following points in his appellate brief:

(1) The Trial Court Sentenced Comer Pursuant to
N.J.S.A. 2C:11-3b(1), the Constitutionality of
Which Is Accordingly Before the Court.

(2)  The Mandatory Minimum Sentence of 30 Years without Eligibility for Parole Required by N.J.S.A. 2C:11-3(b)(1) Is Unconstitutional As Applied to Juvenile Offenders.

  (a)  Objective Indicia of Society's Standards Show A Consensus Against Mandatory Terms of 30 Years Imprisonment Without Parole for Juvenile Homicide Offenders.

  (b)  Juvenile Offenders Are Less Culpable Than Adults.

  (c)  A Term of 30 Years without Eligibility for Parole Is Appropriately Understood To Be Harsh Punishment.

  (d)  The Recognized Purposes of Punishment Do Not Support a Mandatory Minimum Penalty of 30 Years without Parole for Juveniles.

  (e)  Caselaw Both Within and Beyond New Jersey Confirms That a Mandatory Minimum Sentence of 30 Years for Juveniles Is Unconstitutional.

In his reply brief, Comer makes the following additional contentions:

I.  Legislative Deference Is Improper in Resolving Comer's Constitutional Challenge.

II.  No Authority Forecloses Comer's Challenge.

III.  Proportionality Analysis Compels the Relief Comer Seeks.

  (a)  Objective Indicia of Societal Values.

11

(b)     Whether the Punishment Fits the Offense.

(c)     Whether Any Penological Purpose Justifies the Punishment.

IV.     The Court Should Strike Down N.J.S.A. 2C:11-3b(1) As Applied to Juveniles.

Comer has favored us with cases from other jurisdictions and scholarly articles to support his contention that he and other similarly situated minors who commit murder should not be subjected to a mandatory minimum sentence of thirty years without parole. Instead, Comer and his aligned amici contend that the sentencing of such minors should not be so rigid.  They maintain that the Constitution requires such offenders to receive greater individualized consideration of the special characteristics of their youth and immaturity.

Comer argues that the murder statute's thirty-year mandatory minimum term is unconstitutional as applied to juveniles because it imposes a disproportionately harsh punishment that does not comply with evolving notions of appropriate punishment for juvenile offenders.  He relies heavily on the principles set forth in <u>Miller</u> and <u>Zuber</u> regarding the ways in which juveniles are different from adults and how those differences undermine the traditional justifications for punishment.  He notes that in <u>State in the Interest of C.K.</u>, 233 N.J. 44 (2018), our Court relied on those same principles to declare

unconstitutional the lifetime reporting requirements required by Megan's Law. He does not contend that a juvenile may never be sentenced to a thirty-year term. Rather, he advocates that it is unconstitutional to mandate that minimum sentence without any consideration of the Miller factors or the circumstances of the crime.

The Public Defender takes this argument a step further and asserts that under the principles set forth in Miller and Zuber, all mandatory parole bars are unconstitutional as applied to juveniles because they do not allow the sentencing court to consider the attributes of youth and the circumstances of the crime in imposing a sentence that fits the crime and the offender. The Public Defender underscores that Comer's conviction is for felony murder, which it asserts is the type of crime that often results from a juvenile's inability to appreciate and foresee the consequences of his actions.

Comer and the defense amici base their arguments upon a well-established three-part test of unconstitutionality under the Eighth Amendment:

> First, does the punishment for the crime conform with contemporary standards of decency? Second, is the punishment grossly disproportionate to the offense? Third, does the punishment go beyond what is necessary to accomplish any legitimate penological objective?
>
> [Zuber, 227 N.J. at 438 (citation omitted).]

1. <u>Contemporary Standards of Decency</u>

With respect to the first part of the cruel and unusual punishment test (whether the punishment complies with current societal notions of decency or shocks the collective conscience and violates principles of fundamental fairness), Comer points to changes in other states' laws regarding punishment of juveniles. He notes that three States (California, Wyoming and West Virginia) have passed legislation setting maximum parole bars for juveniles at terms less than thirty years, thereby effectively precluding thirty-year parole bars for all juveniles. Three other States (Florida, North Dakota and Washington) and the District of Columbia now allow juveniles to petition for parole eligibility or a reduced sentence after serving twenty- or twenty-five-years' imprisonment. In four other States (Arizona, Georgia, Illinois and Rhode Island), legislation has been introduced that would allow juveniles to be paroled prior to thirty years.

Notably, the New Jersey Legislature recently considered the issue in <u>A.</u> 1233 (2018), which would allow a juvenile sentenced to twenty years or more without parole to: (1) petition for resentencing ten years after the date of conviction and (2) be eligible for parole after twenty years of incarceration.[2]

---

[2] The Legislature has also considered <u>S.</u> 3079 (2017), <u>reintroduced as</u> <u>S.</u> 428 (2018), which would allow a juvenile sentenced to thirty years or more without

Comer also cites Supreme Court decisions from Iowa, Washington and Kansas, and an unpublished district court decision in Florida that have found mandatory sentencing requirements unconstitutional as applied to juveniles because they do not allow a sentencing court to consider the attributes of youth prescribed by Miller.

Comer also submitted a letter to us before oral argument under Rule 2:6-11(d), calling this court's attention to a recent Oregon Court of Appeals case, State v. Link, 441 P.3d 664 (Or. Ct. App. 2019), rev. granted, 451 P.3d 1000, holding that a thirty-year mandatory minimum sentence for juveniles in that State violated the Eighth Amendment.

As further support, Comer cites a report from the Campaign for Fair Sentencing of Youth regarding resentencing under Miller of approximately 1,300 juveniles who were tried as adults and initially sentenced to life imprisonment without parole. The median resentence for those juveniles was twenty-five years before release eligibility, and some received lesser terms.

Comer asserts these resentencing statistics and the changes in other states' laws "is powerful evidence that society does not consider a mandatory minimum

---

parole to petition for review of the sentence after thirty years if convicted of murder and twenty years for all other crimes.

A-1230-18T2

penalty of 30 years without parole appropriate for all juvenile homicide offenders."

## 2. Gross Proportionality

As to the second factor of the cruel and unusual standard (whether the sentence is grossly disproportionate to the offense) Comer argues that the thirty-year minimum term without parole is a particularly harsh sentence for juveniles because juveniles are less culpable than adult offenders for the reasons set forth in Miller and Zuber, and they are usually capable of rehabilitation before expiration of the thirty-year term. He underscores that a juvenile sentenced to a minimum term of thirty years will likely serve that full term, whereas adults sentenced to the same term may not, simply based on the age at which the offender begins the prison term. For this reason, he says the thirty-year minimum disproportionately effects juveniles.

Comer points to studies reflecting that long-term inmates are at greater risk of "accelerated aging," or the development of illness and disability at a young age. They are also prone to "institutionalization," or the dependency upon the institutional structure, the resulting effect of which is often low self-esteem, alienation, lack of self-control and adoption of prison norms and culture. He further opines that juveniles are more likely to be assaulted and sexually abused in prison. Because they serve time during the most formative years, they are

A-1230-18T2

more likely to struggle with relationships, job skills and independence upon release.

3. <u>Punishment Beyond What is Necessary to Accomplish a Valid Policy Objective</u>

With respect to the third factor of the cruel and unusual standard (whether the punishment goes beyond that which is necessary to accomplish any legitimate penal aim), Comer relies on <u>Graham</u>, <u>Miller</u>, and <u>Zuber</u> in asserting that the defining characteristics of youth render inapplicable the traditional justifications for punishment (i.e., retribution, deterrence, incapacitation and rehabilitation). He cites studies that show eighty-five to ninety percent of juveniles will cease committing crimes by their mid-to-late twenties, and only five-to-six percent will continue to commit crimes into their forties; indeed, many are "immediate desisters," or individuals whose first crime is their only crime.

Thus, Comer argues a thirty-year minimum term is excessive and unnecessary for most juvenile offenders. He also notes that prison does not provide sufficient rehabilitative services, citing studies that show recidivism rates are higher for those incarcerated, as opposed to those who receive community-based sanctions.

A-1230-18T2

## C.

The State and the Attorney General respond that the constitutionality of the mandatory sentence for murder is settled law. The statute was upheld in Pratt, 226 N.J. Super. at 326-27, and they maintain that Miller and Zuber do not render that decision invalid. They say there is no need at this time for this court to repudiate this precedent. They further maintain that, even if the special characteristics of youth are duly considered, the thirty-year mandated sentence is not so extreme as to amount to cruel and unusual punishment under the Eighth Amendment.

Responding to the defense's policy-laden arguments, the State disputes the existence of a national trend away from mandatory minimums for juveniles tried as adults. The State argues that the handful of jurisdictions that have rejected thirty-year terms for juveniles do not represent the national consensus, and it cites cases where jurisdictions rejected this approach.

The State also underscores that society is entitled to impose "severe sanctions on a juvenile nonhomicide offender to express its condemnation of the crime and to seek restoration of the moral imbalance caused by the offense." Graham, 560 U.S. at 71. A thirty-year parole bar does this without subjecting a juvenile to an excessive term of imprisonment.

The State further argues that three recent actions by the Legislature show

18

that it still considers the thirty-year minimum appropriate.  The first action it cites is the 2017 amendment to the murder statute, L. 2017, c. 150, which eliminated life without parole for juveniles but maintained the thirty-year minimum sentence.  The second action is the 2015 amendment to the waiver statute, L. 2015. c. 89, which increased to fifteen the minimum age at which a juvenile may be waived to adult court, but otherwise continued the practice of waiving juveniles to adult court for certain crimes.  The third action is the Legislature's non-passage of A. 1233 (2018), a bill which would allow a juvenile sentenced to twenty years or more without parole to petition for resentencing or parole.

## II.

As noted in the introduction, we do not have a clean slate before us.  We have previously considered the constitutionality of the thirty-year minimum sentence mandated by the murder statute in Pratt.

Pratt was waived to adult court and convicted of two weapons offenses and murder for a homicide he committed at age fifteen.  Pratt, 226 N.J. Super. at 309.   The court sentenced him to a thirty-year term without parole for the murder and imposed concurrent terms for the weapon offenses.  Ibid.

On appeal, Pratt argued that the murder statute's imposition of a minimum of thirty years' imprisonment without parole constituted cruel and unusual

punishment as applied to a juvenile because "it fail[ed] to accord individualized sentencing treatment to juveniles." Id. at 325. In so arguing, Pratt relied on two United States Supreme Court decisions, Woodson v. North Carolina, 428 U.S. 280 (1976), and Roberts v. Louisiana, 428 U.S. 325 (1976), which held unconstitutional under the Eighth Amendment statutes that mandated the death penalty for murder as inconsistent with contemporary standards of capital punishment and with the requirement that sentencing be individualized. Pratt, 226 N.J. Super. at 325. We found both cited decisions distinguishable because they addressed death sentences, not mandatory parole bars. Ibid.

We relied in Pratt upon State v. Johnson, 206 N.J. Super. 341, 343 (App. Div. 1985), certif. denied, 104 N.J. 382 (1986), a case in which we held that the murder statute's thirty-year mandatory minimum did not constitute cruel and unusual punishment as applied to an adult convicted of felony murder. Pratt, 226 N.J. Super. at 324. Like Pratt, Johnson had relied on Woodson and Roberts in claiming that the mandatory minimum for murder constituted cruel and unusual punishment because it did not allow the court to consider the individual circumstances of the defendant and the crime. Johnson, 206 N.J. Super. at 343-45. Johnson also distinguished those cases on the ground that they addressed death sentences, not thirty-year parole bars. Id. at 345. Moreover, our courts had upheld mandatory sentencing schemes even though they did not allow for

consideration of individualized circumstances.  Id. at 346-47 (citing State v. Des

Marets, 92 N.J. 62, 81-82 (1983) (Graves Act parole bar); State v. Corbitt, 74

N.J. 379 (1977), aff'd, 439 U.S. 212 (1978) (mandatory life without parole for

first-degree murder); State v. Smith, 58 N.J. 202, 212 (1971) (mandatory license

forfeiture); State v. Gantt, 186 N.J. Super. 262, 272 (Law Div. 1982), aff'd, 195

N.J. Super. 114 (App. Div. 1983) (mandatory Graves Act sentencing)).

Underscoring that the setting of punishment was inherently a function of

the Legislature, the Johnson court quoted Chief Justice Wilentz's declaration in

Des Marets that it was not for the judiciary to "pass on the wisdom of" a

mandatory minimum term under the Graves Act.  Id.  at 347.

> That is a matter solely for the Legislature to decide.
> Once the Legislature has made that decision, and has
> made it within constitutional bounds, our sole function
> is to carry it out. Judges have no business imposing
> their views of "enlightened" sentencing on society,
> (citation omitted), including notions of discretionary,
> individualized treatment, when the Legislature has so
> clearly opted for mandatory prison terms for all
> offenders. It may be that the Legislature is more
> enlightened than the judges.  Our clear obligation is to
> give full effect to the legislative intent, whether we
> agree or not.
>
> [Ibid. (quoting Des Marets, 92 N.J. at 65-66).]

In relation to the thirty-year mandatory minimum term for felony murder,

we stated in Johnson:

> There can be no doubt that "[m]urder is the most heinous and vile offense proscribed by our criminal laws." State v. Serrone, 95 N.J. 23, 27 (1983). In considering the constitutionality of punishment imposed for this offense, great deference must be given to the Legislature's will, as evidenced by the sentencing statute.
>
> [Id. at 347-48.]

Our case law has held the mandatory term for felony murder does not exceed "what appears to be a reasonable expedient to achieve the public purpose of punishment for an egregious offense." Id. at 348; Accord State v. Hodge, 95 N.J. 369, 377 (1984) ("the sentence imposed must reflect the Legislature's intention to focus on the degree of the crime itself as opposed to other factors personal to the defendant").

We held in Pratt that the same rationale applied where the defendant was a juvenile tried and convicted as an adult. Pratt, 226 N.J. Super. at 324. We observed that "public concern about unrehabilitated, violent youthful offenders has 'stimulated a 'just deserts' approach to juvenile crime.'" Id. at 326 (quoting State v. R.G.D., 108 N.J. 1, 8 (1987)). We also reasserted that murder was "the most heinous and vile offense proscribed by our criminal laws." Ibid. (quoting Serrone, 95 N.J. at 27). It therefore could not "fairly be said" that the mandatory minimum violated principles of fundamental fairness, was "grossly disproportionate" to the seriousness of the offense or went beyond what was

22

"necessary to accomplish any legitimate penal aim." Id. at 326-27.

Comer argues that Pratt is not dispositive today because it was issued decades before Roper v Simmons, 543 U.S. 551 (2005), Graham, Miller, Montgomery v. Alabama, __ U.S. __, 136 S. Ct. 718 (2016) and Zuber. He underscores that the principles set forth in Miller are not crime-specific; they apply when a juvenile commits murder and when a botched robbery turns into a murder. He argues that the Court's decision in C.K. shows that those principles are entitled to broad application. We disagree.

Pratt is directly on point and remains good law. Neither Miller nor Zuber require reversal of Pratt, since both cases addressed life sentences and their equivalents.

As the State contends, a thirty-year parole bar is far from a life sentence, particularly as applied to a juvenile. A juvenile tried as an adult who receives a thirty-year minimum sentence will be eligible for parole by forty-seven at the latest. He or she will have an opportunity for some meaningful years outside of prison. See Graham, 560 U.S. at 73. Thus, just as the Woodson and Roberts capital punishment cases were distinguishable in Pratt, Miller and Zuber are distinguishable here. The severity of the sentences imposed is markedly different.

Likewise, we do not believe that C.K. requires otherwise. Rather, that

case supports the State's expression of caution because the trial court and this court agreed that a change in constitutional law had to come from the Supreme Court.

The statute at issue in <u>C.K.</u> was N.J.S.A. 2C:7-2(g) of Megan's Law, which precluded anyone convicted or adjudicated delinquent of certain enumerated sex offenses from ever being able to petition for termination of Megan's Law registration and community notification requirements. 233 N.J. at 47. Section (f) of N.J.S.A. 2C:7-2, however, permitted offenders who did not commit a section (g) enumerated offense to petition for termination of the registration and notification requirements if the offender had been offense free for fifteen years following conviction or release from prison, whichever was later, and could establish that he or she was unlikely to pose a threat to others. N.J.S.A. 2C:7-2(f). Because C.K. committed an offense enumerated under section (g), he was unable to petition for termination of the lifetime reporting requirements after fifteen years. <u>C.K.</u>, 233 N.J. at 47-48.

When C.K. was twenty-three years old, the State charged him with aggravated sexual assault of his adopted brother, who claimed that C.K. began sexually assaulting him when he was seven years old, and C.K. was fifteen years old, and continued doing so for two years. <u>C.K.</u>, 233 N.J. at 49. Between the time that the assaults ended, and the brother reported them to police, C.K. had

graduated college with a bachelor's degree in psychology and had earned a master's degree in counseling. Ibid. He was working as a teacher's assistant for children with autism at the time of his arrest. Id. at 50.

The State moved to try C.K. as an adult but withdrew the motion after C.K. agreed to plead guilty in the Family Part. Id. at 49. In 2003, he admitted to performing oral sex on his brother when he was between the ages of fifteen and seventeen. Ibid. The court imposed three years of probation and required C.K. to attend sex-offender treatment and to comply with Megan's Law. Id. at 50. The State classified him as a Tier One offender, the lowest risk category for reoffending, but because he was adjudicated delinquent for a section (g) enumerated offense, C.K. was subject to the lifetime registration and notification requirements with no possibility of petitioning for their termination. Id. at 47-48.

The Supreme Court agreed that C.K.'s arguments and supporting evidence were compelling, and it declared section (f) of N.J.S.A. 2C:7-2 unconstitutional under the substantive due process guarantee of Article I, Paragraph 1 of the New Jersey Constitution. Id. at 48. The Court found that the statute's permanent bar from termination of the reporting requirements lacked a rational relation to any legitimate government objective. Ibid. The purpose of the registration and notification requirements was "to 'permit law enforcement officials to identify

and alert the public' about sex offenders who may pose a danger to children." Id. at 59 (quoting N.J.S.A. 2C:7-1(a)).  But the lifetime reporting requirement was based only on a presumption that the offender would forever be a danger to society.  Id. at 66.  The evidence disproved this presumption.  Id. at 76.

After discussing the principles set forth in Miller, Zuber, and other case law regarding the differences between juveniles and adults, the Court said in C.K.:

> Our laws and jurisprudence recognize that juveniles are different from adults—that juveniles are not fully formed, that they are still developing and maturing, that their mistakes and wrongdoing are often the result of factors related to their youth, and therefore they are more amenable to rehabilitation and more worthy of redemption.
>
> [Id. at 67.]

These principles negated the notion that juvenile sex offenders would forever pose a threat to society so as to justify lifetime registration requirements.  Ibid.

C.K. had not committed any crime in twenty years and had complied with his reporting requirements.  Id. at 76.  As noted, he earned an advanced degree and consistently maintained employment.  Ibid.  He was a contributing member of society, and a number of experts opined that he posed little threat of reoffending.  Ibid.  Yet, "[s]olely because of the nature of the offense he committed as a juvenile, C.K. is presumed under subsection (g) to be a

permanent, lifetime risk to the safety of the public." Id. at 77. That presumption was "not supported by scientific or sociological studies, our jurisprudence, or the record in this case." Ibid. It therefore did not further a legitimate state interest and did not withstand scrutiny under Article I, Paragraph 1 of our Constitution. Ibid.

C.K. does not compel a ruling by this court that the thirty-year mandatory minimum term for murder is unconstitutional. The statute at issue there was not a criminal punishment statute challenged as cruel and unusual, but, rather, was a regulatory statute challenged on substantive due process grounds. While the Court relied in C.K., in part, on the principles set forth in Miller and Zuber regarding the differences between juveniles and adults, the Court's decision fundamentally was based on the lack of rational basis for the presumption that all juvenile sex-offenders will forever be a danger to society.

We decline to read the Court's decision in C.K. as expansively as Comer wishes, and to repudiate the precedents in Pratt and Johnson. We must be mindful that as an intermediate appellate court, our institutional role is limited. See, e.g., Williams v. Raymour Furniture Co., Inc., 449 N.J. Super. 559, 564 n.3 (App. Div. 2017). The criminal statutes are presumptively valid, and we are not persuaded that the defense has overcome that presumption. See, e.g., State v. Pimentel, 461 N.J. Super. 468, 491 (App. Div. 2019) (upholding a statute

mandating a minimum jail term for repeat drunk driving offenders).

As the State argues, the actions (and inactions) of our Legislature show that it still approves of courts trying certain juveniles as adults and subjecting them to adult punishment. Although the Legislature has increased the age of waiver to fifteen, it nonetheless maintained the process of trying certain juveniles as adults. When it recently amended the murder statute to conform with Miller and Zuber by eliminating the possibility of a life without parole term for juveniles tried as adults, it nevertheless maintained the thirty-year minimum for all offenders.

Despite its substantial research and advocacy, the defense has failed to establish that the thirty-year parole bar as applied to juvenile murderers fails to conform with current standards of decency or "is such as to shock the general conscience and to violate principles of fundamental fairness." Pratt, 226 N.J. Super. at 325. Although Comer eloquently raises a number of policy arguments that support imposition of a lesser term on juveniles, he has not shown that a thirty-year minimum is grossly disproportionate to the offense.

Murder is the most serious crime that a person can commit. Even taking into account the articles and cases Comer cites from a few other jurisdictions, we are not prepared to upset settled law and declare a thirty-year minimum is grossly disproportionate to that crime when it is committed by a juvenile.

Nor has the United States Supreme Court ever held this. As that Court noted in Graham, although the Eighth Amendment imposes certain limitations, society is still generally entitled to impose severe punishments for severe crimes. 560 U.S. at 71. Murder is one of them.

We have serious doubts that a thirty-year minimum imposed upon a juvenile offender constitutionally amounts to a life without parole ("LWOP") sentence or its functional equivalent. Where, as here, the juvenile commits the murder at the age of seventeen, he will be eligible for parole at approximately the age of forty-seven, assuming no other prior sentences need to be completed first. We recognize the Court in Zuber rejected the use of life expectancy tables to determine whether a sentence amounts to an LWOP sentence. Zuber, 227 N.J. at 450. Even so, we are unpersuaded that a prospect of release before the age of fifty is tantamount to a life sentence. The thirty years re-imposed here on Comer at his resentencing did not violate any Supreme Court holdings.

### III.

The issues before us are complex and have been well advocated. After reflecting upon them carefully, we are not convinced that it is appropriate for this intermediate appellate court to discard longstanding precedent, particularly when no dispositive holding of the Supreme Courts of our nation or state compels such drastic action.

The debate over applying the thirty-year minimum to juvenile murderers should instead proceed in the Legislature, subject of course to the ultimate authority of the Supreme Court to assure compliance with the Constitution. In the meantime, James Comer has received a very substantial reduction of his original sentence. There is no constitutional imperative to go further.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1230-18T2